135 Nev., Advance Opinion 11

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL A. TRICARICHI,
Appellant,
vs.
COÖPERATIEVE RABOBANK, U.A.;
UTRECHT-AMERICA FINANCE CO.;
AND SEYFARTH SHAW LLP,
Respondents.

No. 73175

FILED

MAY 02 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from district court orders, certified as final pursuant to NRCP 54(b), dismissing tort claims for lack of personal jurisdiction. Eighth Judicial District Court, Clark County; Joseph Hardy, Jr., Judge.

*Affirmed.*

Hutchison & Steffen, LLC, and Michael K. Wall, Mark A. Hutchison, and Todd W. Prall, Las Vegas; Sperling & Slater and Thomas D. Brooks and Scott F. Hessell, Chicago, Illinois,
for Appellant.

Lewis Roca Rothgerber Christie LLP and Dan R. Waite, Las Vegas; Hughes Hubbard & Reed LLP and Chris Paparella, New York, New York,
for Respondents Coöperatieve Rabobank, U.A., and Utrecht-America Finance Co.

Morris Law Group and Steve L. Morris, Akke Levin, and Ryan M. Lower, Las Vegas,
for Respondent Seyfarth Shaw LLP.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

19-19263

*OPINION*

By the Court, SILVER, J.:

In this appeal, we address specific personal jurisdiction and whether to adopt the conspiracy-based theory of personal jurisdiction. In the underlying case, Michael Tricarichi sued respondents for luring him into an intermediary or "Midco" tax shelter scheme that left him liable as a transferee for a $21.2 million federal tax deficiency and penalty. The district court dismissed Tricarichi's fraud, conspiracy, and racketeering claims for lack of personal jurisdiction over respondents, and concluded that *Walden v. Fiore*, 571 U.S. 277 (2014), overruled *Davis v. Eighth Judicial District Court*, 97 Nev. 332, 629 P.2d 1209 (1981), to the extent *Davis* supported a conspiracy-based theory of personal jurisdiction.

First, as to specific personal jurisdiction, we conclude that neither sufficient minimum contacts nor conspiratorial acts targeted at Tricarichi support jurisdiction in Nevada. Tricarichi did not identify a link between the acts or conduct underlying his tort claims and Nevada, and because Tricarichi's injury does not connect respondents' actions to Nevada in a jurisdictionally significant way, the district court correctly determined that respondents lacked minimal contacts with Nevada to satisfy due process and support personal jurisdiction. Second, we clarify that *Walden* did not overrule *Davis* and that Nevada's long-arm statute encompasses a conspiracy-based theory of personal jurisdiction, which we adopt herein as a basis on which specific jurisdiction may lie. However, we conclude Tricarichi fails to establish personal jurisdiction under that theory because the complaint does not allege conspiratorial acts sufficient to establish the requisite minimum contacts with Nevada. We therefore affirm the district court's orders.

## FACTS AND PROCEDURAL HISTORY

Appellant Michael Tricarichi was the president and sole shareholder of Westside Cellular, Inc., an Ohio C corporation. Relevant here, when Westside dissolved, it realized roughly $40 million from a settlement agreement in a civil lawsuit. Under the C corporate tax structure, Westside's proceeds were taxable both to Westside at the corporate level and, after distribution, to Tricarichi at the shareholder level.

Fortrend International, LLC, a now defunct San Francisco-based "Midco" promoter, proposed Tricarichi engage in an intermediary transaction tax shelter known as a "Midco transaction" in order to avoid double taxation. Midco transactions are structured to provide the seller with the benefits of a stock sale and the buyer with the benefits of the asset purchase while avoiding the gain tax liability by claiming certain tax attributes—such as losses—that would allow the party to absorb the liability were the tax attributes legitimate. *Salus Mundi Found. v. C.I.R.*, 776 F.3d 1010, 1013 (9th Cir. 2014). In 2001, the IRS determined that Midco transactions were improper tax avoidance schemes, for which fictional losses would be disallowed and corporate tax liability assessed. *See Tricarichi v. C.I.R.*, 110 T.C.M. (CCH) 370 (T.C. 2015). Thus, if the IRS determines that the attributes of the Midco are artificial, the tax liability created by the built-in gain on the sold assets remains due. *Salus Mundi Found.*, 776 F.3d at 1013.

Fortrend began negotiating with Tricarichi around March 2003 for the purchase of Tricarichi's Westside stock. At that time, Tricarichi resided in Ohio, but moved to Nevada in May 2003. In July 2003, Fortrend's affiliate intermediary, Nob Hill, Inc., sent Tricarichi a letter of intent to purchase his Westside stock. In August 2003, Fortrend contacted respondent Coöperatieve Rabobank, U.A., to request a short-term loan to

Nob Hill to finance the Westside stock purchase. Westside would then repay the loan once the stock purchased closed. Rabobank, which is organized under Dutch law and has its principle place of business in the Netherlands, also has principal branches in Utrecht, Netherlands, and New York, New York. To facilitate the funds transfer, Westside opened an escrow account with Rabobank. The account documents list Tricarichi's Nevada address.[1]

On September 9, 2003, Tricarichi sold all of his Westside stock to Nob Hill for $34.6 million. Rabobank's wholly owned subsidiary, respondent Utrecht-America Finance Co., a Delaware corporation with its principal place of business in New York, New York, thereafter made a short-term loan to Nob Hill in New York for $2.9 million for the purchase of Westside.[2] Nob Hill then transferred those proceeds, along with the remainder of the purchase price, from its Rabobank account to Tricarichi's Rabobank account. Tricarichi thereafter transferred the funds to another bank account he controlled in New York. Nob Hill repaid Utrecht the $2.9 million with Westside's funds, and Rabobank received a $150,000 fee from Nob Hill. Nob Hill thereby acquired Tricarichi's Westside stock.

Tricarichi resigned from Westside. Nob Hill represented to Tricarichi that Westside's tax liability for 2003 would be satisfied and further agreed to indemnify Tricarichi against Westside's tax liability. Nob Hill also warranted that it did not intend to cause Westside to engage in an IRS reportable transaction.

---

[1]Tricarichi alleges that Rabobank required that he open Rabobank accounts for escrow and closing.

[2]Another Fortrend affiliate loaned Nob Hill the remainder of the $34.6 million purchase price.

Consistent with the way Midco transactions operate, Nob Hill quickly merged into Westside. At that point, roughly $5.2 million remained in Westside's account. According to Tricarichi, Fortrend transferred the funds to its affiliates over the next few months rather than using those funds to facilitate Nob Hill's debt-collection business.

After Nob Hill purchased Westside's stock, Nob Hill's sole shareholder, Millennium Recovery Fund, LLC,[3] contributed a portion of debt to Westside with a purported tax basis of about $43 million. Westside then wrote off the debt as uncollectable and used it to claim a bad debt tax deduction of roughly $42.5 million, thereby offsetting the settlement income and claiming it had no income tax liability for 2003. Similarly, Millennium previously planned to acquire a distressed Japanese debt for $137,000 and claim a $314 million basis for it. In that case,[4] respondent Seyfarth Shaw LLP, a Chicago, Illinois, law firm, advised Nob Hill's president, John McNabola, that this high tax basis was appropriate.[5] Seyfarth has offices in ten United States locations but none in Nevada and is not registered to do business in Nevada. None of Seyfarth's attorneys have practiced in Nevada in connection with any matter involving Tricarichi.

The IRS audited Westside's 2003 tax return and disallowed roughly $42.5 million in bad debt deductions and over $1.65 million claimed deductions for legal and professional fees. Westside did not pay the

---

[3]Millennium is another Fortrend affiliate, formed in the Cayman Islands.

[4]The legal opinion letter was addressed and limited to McNabola at Millennium in Dublin, Ireland.

[5]Graham Taylor, who was a partner at Seyfarth, wrote the letter and later pleaded guilty to conspiring to commit tax fraud.

resulting tax deficiency of $15,186,570 and penalties of $6,012,777, as it had no assets. Thus, the IRS determined that Tricarichi had transferee liability. Tricarichi petitioned for review in the U.S. Tax Court. That court determined that the Westside stock transfer was an improper Midco transaction, Tricarichi had constructive knowledge that Fortrend intended to employ an illegal tax shelter, and Tricarichi was liable for the tax deficiency and penalties plus interest. *See Tricarichi v. C.I.R.*, 110 T.C.M. (CCH) 370 (T.C. 2015).

Tricarichi filed the underlying complaint against respondents Rabobank, Utrecht, and Seyfarth, asserting claims for aiding and abetting fraud, civil conspiracy, and violation of Nevada's racketeering statute (NRS 207.400(1)). Tricarichi also asserted a claim for unjust enrichment against Rabobank and Utrecht.[6] Seyfarth, Rabobank, and Utrecht filed motions to dismiss the complaint for lack of personal jurisdiction.

Relying on *Walden v. Fiore*, 571 U.S. 277 (2014), the district court granted the motions, finding that Tricarichi had not shown conduct by respondents in Nevada or directed at Nevada that would enable the court to exercise personal jurisdiction. The district court also concluded that appellant's reliance on *Davis v. Eighth Judicial District Court*, 97 Nev. 332, 629 P.2d 1209 (1981), for a conspiracy-based theory of personal jurisdiction was misplaced because *Walden* overruled *Davis*. And, even though Tricarichi alleged Rabobank and Utrecht knew he was a Nevada resident when they contacted him about opening certain accounts and transferring

---

[6]The complaint also asserted claims against PricewaterhouseCoopers, LLP, and Graham Taylor, but those claims were not addressed in the dismissal orders, and neither of those defendants are parties to this appeal.

funds, the court found Tricarichi's claims did not arise from those contacts.[7] Tricarichi appeals.

## DISCUSSION

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating that Nevada's long-arm statute grants jurisdiction over the defendants and that the exercise of that jurisdiction comports with the principles of due process. *Fulbright & Jaworski LLP v. Eighth Judicial Dist. Court*, 131 Nev. 30, 36, 342 P.3d 997, 1001 (2015) (citing NRS 14.065). When, as here, the litigation is in the pleading or motion stage, the plaintiff need only make a "prima facie showing of personal jurisdiction." *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 692, 857 P.2d 740, 744 (1993) (internal quotation marks omitted). The court may consider evidence presented through affidavits and must accept properly supported proffers as true and resolve factual disputes in the plaintiff's favor. *Viega GmbH v. Eighth Judicial Dist. Court*, 130 Nev. 368, 374, 328 P.3d 1152, 1156 (2014). Due process requires that "a nonresident defendant must have sufficient minimum contacts with the forum state so that subjecting the defendant to the state's jurisdiction will not offend traditional notions of fair play and substantial justice." *Fulbright*, 131 Nev. at 36, 342 P.3d at 1001 (internal quotation marks omitted).

Tricarichi challenges the district court's conclusions that (1) he failed to make a prima facie showing that Rabobank and Utrecht's contacts with Nevada are sufficient for specific personal jurisdiction;[8] and

---

[7]The court certified the orders as final under NRCP 54(b).

[8]Tricarichi agrees that general jurisdiction is not at issue.

(2) Rabobank, Utrecht, and Seyfarth's participation in a conspiracy aimed at him in Nevada does not provide an alternative basis for personal jurisdiction. Reviewing the district court's decisions de novo, *see Dogra v. Liles*, 129 Nev. 932, 936, 314 P.3d 952, 955 (2013), we consider each of these bases for personal jurisdiction in turn.

*Specific personal jurisdiction*

"[S]pecific jurisdiction is proper only where the cause of action arises from the defendant's contacts with the forum." *Fulbright*, 131 Nev. at 37, 342 P.3d at 1002 (internal quotation marks omitted). In evaluating specific personal jurisdiction, courts consider two factors: (1) whether the defendant purposefully availed itself of the privilege of acting in the forum state or purposefully directed its conduct towards the forum state, and (2) whether the cause of action arose from the defendant's purposeful contact or activities in connection with the forum state, such that it is reasonable to exercise personal jurisdiction. *Dogra*, 129 Nev. at 937, 314 P.3d at 955; *Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 122 Nev. 509, 513, 134 P.3d 710, 712-13 (2006).

In analyzing whether specific personal jurisdiction exists in a tort action, courts apply the "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984), which considers whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015) (internal quotation marks and citations omitted).[9] Thus, the plaintiff's contacts with the defendant

---

[9]Thus, in tort actions, some courts focus solely on whether the defendant's tortious conduct was purposefully directed towards the forum state rather than whether the defendant purposefully availed itself of the

and the forum are not the proper focus of jurisdictional analysis; instead, the effects inquiry and the question of minimum contacts focuses on the relationship between the defendant, the forum, and the litigation, and "the defendant's suit-related conduct," which "must create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

In *Walden*, the Supreme Court reviewed whether Nevada could exercise personal jurisdiction over a Georgia police officer who seized money belonging to two airline passengers at a Georgia airport and helped draft a probable cause affidavit for the forfeiture. *Id.* at 279-81. The passengers, residents of California and Nevada, filed a tort action against the police officer in Nevada district court. *Id.* at 280-81. The Supreme Court determined that the lower court improperly shifted the focus of the effects of the alleged tort and the minimum contacts analysis from the defendant's contacts with *the forum state* to defendant's contacts with *plaintiffs*. *Id.* at 288-89. The Court emphasized that, "[f]irst, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," *id.* at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), and second, the "minimum contacts analysis looks to the defendant's contacts

---

laws of the forum state. *See Picot*, 780 F.3d at 1212 ("For claims sounding in tort, we . . . look to evidence that the defendant has directed his actions at the forum state . . . ."); *Dogra*, 129 Nev. at 937, 314 P.3d at 955 (providing that specific personal jurisdiction can be based either on purposeful availment or on purposefully directed conduct). *But see Planning Grp. of Scottsdale, LLC v. Lake Mathews Mineral Props., Ltd.*, 246 P.3d 343, 348-49 (Ariz. 2011) (rejecting a rigid distinction between purposeful availment and purposefully directed conduct when analyzing specific personal jurisdiction issues). Because we conclude that there is no personal jurisdiction under either basis, we need not address this distinction further.

with the forum State itself, not the defendant's contacts with persons who reside there," *id.* at 285 (internal quotation marks omitted).

Applying that analysis to the facts, the Court held that the defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 289. Plaintiffs' claim that Nevada had jurisdiction because defendant's tortious conduct injured plaintiffs while they resided in Nevada likewise failed, as the Court observed that the injury (lack of access to seized funds) "is not the sort of effect that is tethered to Nevada in any meaningful way." *Id.* at 290. While defendant's conduct of seizing funds in Georgia had an effect on the plaintiff in Nevada, that effect did not result from anything that independently occurred in Nevada and therefore was not a proper basis for jurisdiction. *Id.*

*Respondents did not purposefully direct activities at Nevada*

The first factor of specific personal jurisdiction requires that respondents purposefully availed themselves of the privilege of acting in Nevada or that their acts were expressly aimed at Nevada and caused harm that they knew was likely to be suffered in Nevada. *Dogra*, 129 Nev. at 937, 314 P.3d at 955; *Arbella*, 122 Nev. at 513, 134 P.3d at 712-13; *Picot*, 780 F.3d at 1213-14 (providing that specific personal jurisdiction in tort actions should focus on conduct the defendant purposefully directs at the forum state). Tricarichi contends that he made a prima facie showing that Rabobank and Utrecht directed their actions at him in Nevada. He points to Nob Hill's loan request to Rabobank and Rabobank's request that he open individual and escrow accounts at Rabobank because the documents associated with the opening of the accounts and closing of the loan reflect his Nevada address. We disagree.

First, Rabobank and Utrecht's services occurred in New York where the accounts were opened and the loan proceeds transferred. Tricarichi identifies communications he made to Rabobank and Utrecht, including his resignation, wire transfer instruction, and account opening documents, but does not dispute that those documents were actually sent from a San Francisco fax number. Rabobank's receipt of account documents and a loan request showing Tricarichi's Nevada address, by themselves, are incidental to activities that made up the Midco transaction, i.e., the loan, stock purchase, and transfer of money through an intermediary, all of which took place outside of Nevada. Thus, we are not persuaded that this evidence shows purposeful availment or express aiming such that would meet the first factor of personal jurisdiction.[10] *See Walden*, 571 U.S. at 286 (explaining that due process requires that jurisdiction be based on a defendant's "own affiliation with the State," and it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff" (quoting *Burger King*, 471 U.S. at 475)); *Fulbright*, 131 Nev. at 40-41, 342 P.3d at 1002-04 (holding that a Texas law firm's representation of a Nevada resident on a Texas-based matter, combined with communications with the client in Nevada incidental to that representation, was insufficient evidence to make a prima facie showing of

---

[10]Tricarichi also relies on *Peccole v. Eighth Judicial District Court*, which concluded that Nevada had jurisdiction over nonresident defendants because they purposefully directed their activities at Nevada through their agent, who contacted plaintiffs in Nevada to solicit the sale of defendants' Colorado property. 111 Nev. 968, 971, 899 P.2d 568, 570 (1995). *Peccole* is distinguishable because here, Rabobank and Utrecht did not reach out to Tricarichi in Nevada and solicit his participation in the Midco transaction.

specific personal jurisdiction where the firm did not solicit the client's business and the representation dealt with a Texas matter).

Second, merely suffering injury while residing in the forum is likewise insufficient. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. To illustrate how the effects inquiry works, *Walden* pointed to the facts in *Calder*, wherein a California actress sued a reporter and editor for defamation based on an article written and published in a Florida newspaper. *Id.* at 286-87 (citing *Calder*, 465 U.S. at 788). *Calder* held that California had jurisdiction not because the actress suffered injury there, but because the tortious conduct occurred in California, where the reporter had gathered the information from sources in California about the actress's activities in California and the article was widely circulated in California. *Id.* at 287.

Here, Tricarichi claims he suffered injury while residing in Nevada, but because Rabobank and Utrecht's acts were not connected to Nevada, that injury is insufficient to establish minimum contacts. *Id.* at 289 (rejecting approach to minimum contacts analysis that grounds personal jurisdiction based on defendant's knowledge of plaintiff's connections to the forum combined with plaintiff suffering foreseeable harm there because it "impermissibly allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis").

*Tricarichi's claims do not arise from respondents' activities in connection with Nevada*

The second factor of specific personal jurisdiction requires that the claims arise from respondents' activities in connection with Nevada. *Fulbright*, 131 Nev. at 38, 342 P.3d at 1002; *see also Bristol-Myers Squibb*

SUPREME COURT
OF
NEVADA

(O) 1947A

12

*Co. v. Superior Court*, 582 U.S. ___, ___, 137 S. Ct. 1773, 1780 (2017). In addressing the second factor, we have stated "the claims must have a specific and direct relationship or be intimately related to the forum contacts." *Arbella*, 122 Nev. at 515-16, 134 P.3d at 714 (internal quotations omitted). Here, the only alleged Nevada contact is that Rabobank and Utrecht knew that Tricarichi used a Nevada address because he provided it on bank account opening and loan closing documents. Rabobank and Utrecht's knowledge in that regard does not have a specific and direct relationship to the Midco transaction on which Tricarichi grounds his tort claims. The Midco transaction required the transfer of money through Rabobank accounts in New York and the purchase of Tricarichi's shares in an Ohio Corporation made possible through Utrecht's loan in New York. The fact that account opening and loan documents listed Tricarichi's Nevada address is inconsequential to that transaction. *See Walden*, 517 U.S. at 289-90; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (rejecting the lower court's conclusion that personal jurisdiction existed because the nonresident defendant knew the plaintiff was an Indiana company and could foresee that its misleading emails and sales would harm the plaintiff in Indiana); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 823 (8th Cir. 2014) (holding that even if the defendant solicited an agreement knowing the plaintiff was an Iowa corporation, that knowledge could not create the required minimum contacts under *Walden*).

Although Tricarichi relies on cases decided after *Walden* that found personal jurisdiction based on the effects test, those cases are distinguishable because they addressed defendants' activities with the forum that gave rise to the plaintiffs' claims. *See, e.g., Rilley v.*

*MoneyMutual, LLC*, 884 N.W.2d 321, 328-29 (Minn. 2016) (finding personal jurisdiction over a finance company that emailed over 1,000 Minnesota residents to solicit payday loans and distinguishing *Walden* on the facts because the contacts were not random or fortuitous). Such activity is missing here. Thus, because Tricarichi did not identify any jurisdictionally significant conduct by Rabobank and Utrecht showing necessary minimum contacts with Nevada, the district court properly granted respondents' motion to dismiss for lack of specific personal jurisdiction.[11]

*Conspiracy theory jurisdiction*

As an alternative basis for personal jurisdiction over Rabobank and Utrecht, and as the sole basis for jurisdiction over Seyfarth, Tricarichi asserts that respondents' participation in a conspiracy that targeted, defrauded, and injured a Nevada resident subjects them to Nevada jurisdiction. Rabobank, Utrecht, and Seyfarth disagree, arguing that Nevada has not adopted a conspiracy theory of personal jurisdiction and *Walden* precludes jurisdiction based on participation in an out-of-state conspiracy.

A conspiracy theory of personal jurisdiction provides that a nonresident defendant who lacks sufficient minimum contacts with the

---

[11]Tricarichi also contends that personal jurisdiction is reasonable. But, because minimum contacts are lacking, jurisdiction in Nevada is inconsistent with fair play and substantial justice. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 116 (1987); *cf. Peccole*, 111 Nev. at 971, 899 P.2d at 570 (analyzing whether exercising jurisdiction over defendant who had sufficient minimum contacts with Nevada was reasonable); *Trump*, 109 Nev. at 700, 857 P.2d at 749 (observing that if plaintiff establishes that defendant purposefully availed itself of the privilege of acting in Nevada and the cause of action arose from defendant's Nevada activities, the burden shifts to defendant to set forth a compelling case that jurisdiction would still be unreasonable).

Supreme Court
OF
Nevada

(O) 1947A

forum may be subject to personal jurisdiction based on a co-conspirator's contacts with the forum. *See Gibbs v. PrimeLending*, 381 S.W.3d 829, 834 (Ark. 2011). To support jurisdiction based on conspiracy theory and satisfy due process, a plaintiff must show (1) an agreement to conspire, (2) the acts of co-conspirators are sufficient to meet minimum contacts with the forum, and (3) the co-conspirators reasonably expected at the time of entering into the conspiracy that they would be subject to jurisdiction in the forum state. *See id.* at 832; *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 489 (Md. 2006). Courts that have applied the theory have observed that "[t]he underlying rationale for exercising personal jurisdiction on the basis of conspiracy is that, because co-conspirators are deemed to be each other's agents, the contacts that one co-conspirator made with a forum while acting in furtherance of the conspiracy may be attributed for jurisdictional purposes to the other co-conspirators." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *29 (S.D.N.Y. Oct. 20, 2015); *Mackey*, 892 A.2d at 483-84 (noting that courts have routinely drawn on the substantive law of agency as justification for exercising jurisdiction over nonresident defendants and that conspiracy theory jurisdiction is an analogous concept).

We conclude that Nevada's long-arm statute encompasses a conspiracy theory of personal jurisdiction. *See* NRS 14.065(1) (personal jurisdiction is proper "on any basis not inconsistent with" the Nevada or United States Constitutions). Although respondents correctly note that we have not expressly adopted the theory, our decision in *Davis v. Eighth Judicial District Court* recognizes that theory. 97 Nev. 332, 334, 338-39, 629 P.2d 1209, 1211, 1213 (1981), *superseded by rule on other grounds, as recognized in Hansen v. Eighth Judicial Dist. Court*, 116 Nev. 650, 653-56,

6 P.3d 982, 983-85 (2000). There, we concluded it was reasonable to require nonresident defendants who allegedly engaged in a conspiracy to seize control of a Nevada estate "to appear and defend their activities in Nevada where the alleged injuries occurred." *Id.*

The district court below agreed with respondents that *Walden* overruled *Davis*. But, while *Walden* readdressed *Calder*'s effects test and narrowed its application, *Walden* did not involve a conspiracy or discuss co-conspirator-based jurisdiction. We therefore conclude that *Davis* is distinguishable and *Walden*'s holding does not overrule *Davis*. Accordingly, conspiracy allegations may provide a basis for specific personal jurisdiction when the acts of co-conspirators are sufficient to meet minimum contacts with Nevada and the co-conspirators reasonably expected *at the time of entering into the conspiracy* that their actions would have consequences in Nevada.[12] *Cf. Davis*, 97 Nev. at 334, 338-39, 629 P.2d at 1211, 1213.

*Davis* did not articulate a specific test for conspiracy theory personal jurisdiction or discuss the acts of co-conspirators attributed to others. However, the *Davis* facts suggest a three-factor test. Notably, the defendants in *Davis* were a group of aides, physicians, attorneys, and business associates who "had attended [to] the late [Howard] Hughes during the last years of his life"; and allegedly "conspired to seize control of the Hughes' empire for their own financial gain by taking advantage of the trust and confidence Hughes had placed in them," causing "injury to

---

[12]While some courts have expressed doubt as to whether conspiracy theory personal jurisdiction applies post-*Walden*, we conclude that because co-conspirators are deemed each other's agents, contacts co-conspirators make in Nevada "while acting in furtherance of the conspiracy may be attributed for jurisdictional purposes to the other co-conspirators." *See In re LIBOR-Based Fin. Instruments*, 2015 WL 6243526, at *29.

SUPREME COURT
OF
NEVADA

(O) 1947A

[plaintiff's] property located in Nevada." 97 Nev. at 334, 338, 629 P.2d at 1211, 1213. Thus, the alleged conspiracy was directed at Hughes in Nevada where his property and business interests were located, and the co-conspirators included physicians and others who actually attended to him there, and thus had the necessary minimum contacts and reasonable expectation that their actions would lead to consequences in Nevada such that they could be subject to Nevada jurisdiction. These key facts outlined in *Davis* therefore support jurisdiction over nonresident co-conspirators where: (1) there is a conspiracy, (2) the acts of co-conspirators meet minimum contacts with the forum, and (3) the co-conspirators could have reasonably expected at the time of entering into the conspiracy that their actions would have consequences in the forum state. *See Gibbs*, 381 S.W.3d at 832 (addressing these factors).

Applying the theory here, however, we conclude that it does not support jurisdiction, as Tricarichi failed to make a prima facie showing of pertinent co-conspirator jurisdictional facts. Tricarichi alleges that Rabobank and Utrecht earned fees by financing other Midco transactions and financed the Westside transaction knowing it was illegal. Further, he claims that in 2001, two years before the Westside transaction, Seyfarth issued an opinion letter to Fortrend-affiliate Millennium supporting an improper debt scheme that Fortrend relied on in contributing and writing off Japanese debt. Tricarichi believes that this 2001 opinion letter was relied on when Westside claimed a deduction on its 2003 tax return. He further contends that in March 2003, respondents joined together to induce him to engage in the Westside Midco transaction to his detriment.

 

Assuming, *arguendo*, these allegations establish the first prong of the test,[13] Tricarichi has not identified any co-conspirator acts that meet the minimum contacts requirement to satisfy the second prong of the test. Instead, he points to the original and amended letters of intent to purchase Westside stock sent in July and August 2003 by Fortrend-affiliate Nob Hill[14] to his address in Nevada. These two contacts, however, did not involve the initial solicitation for his participation in the Midco transaction, as his complaint alleges that negotiations with Fortrend began in March or April 2003, well before his move to Nevada. Thus, the timing of the letters of intent does not support Tricarichi's contention that co-conspirator respondents directed their acts at Nevada, as the letters reflecting his Nevada address were incidental to initial solicitation negotiations occurring elsewhere and do not satisfy the constitutional minimum contacts requirement. *Walden*, 571 U.S. at 289 (explaining that jurisdictional analysis that attributes plaintiff's forum connections to defendant "obscures the reality that none of [the] challenged conduct had anything to do with Nevada itself").

Jurisdiction based on a conspiracy theory also fails on the third prong of the test because Tricarichi's allegations do not support that co-conspirator respondents reasonably expected at the time of entering into

---

[13]We decline to consider Rabobank and Utrecht's argument that Tricarichi is collaterally estopped from re-litigating the U.S. Tax Court's determination that he knew or should have known that the Midco transaction was a tax fraud, as it was not raised in district court as a basis for dismissal on personal jurisdiction grounds. *See City of Las Vegas v. Cliff Shadows Prof'l Plaza*, 129 Nev. 1, 7 n.2, 293 P.3d 860, 864 n.2 (2013).

[14]Neither Fortrend nor Nob Hill were named as defendants.

Supreme Court
of
Nevada

(O) 1947A

18

the conspiracy that their actions would have consequences in Nevada. *See Gibbs*, 381 S.W.3d at 832. The Midco transaction on which the conspiracy is centered concerned an Ohio corporation transferring funds to New York. Thus, we conclude that the district court properly dismissed the claims against respondents as to a conspiracy theory of personal jurisdiction.[15]

## CONCLUSION

We clarify that under Nevada's long-arm statute and in line with *Davis v. Eighth Judicial District Court*, 97 Nev. 332, 629 P.2d 1209 (1981), a party may demonstrate personal jurisdiction under the conspiracy-based theory. We conclude here, however, that Tricarichi fails to demonstrate personal jurisdiction under either specific jurisdiction or under the conspiracy-based theory for personal jurisdiction. Tricarichi does not identify a jurisdictionally significant link between respondents and Nevada, and Tricarichi's injury, without more, is not a sufficient connection to Nevada. Tricarichi also fails to allege conspiratorial acts sufficient to meet

---

[15]Tricarichi alternatively argues that the district court abused its discretion by denying his motion for jurisdictional discovery. In light of the record here, the district court was within its discretion to conclude that jurisdictional discovery was unlikely to lead to evidence establishing jurisdiction. Tricarichi failed to make a prima facie case that Rabobank, Utrecht, and Seyfarth had sufficient minimum contacts with Nevada under either a specific or conspiracy theory of personal jurisdiction, and in denying his request for jurisdictional discovery, the district court noted that Tricarichi already had the benefit of discovery from Rabobank and Utrecht in the tax court proceeding before he filed his complaint here. We perceive no abuse of discretion in that determination. *See Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012) (reviewing the district court's discovery decisions for an abuse of discretion); *Viega GmbH*, 130 Nev. at 382, 328 P.3d at 1160 (explaining jurisdictional discovery is not warranted where plaintiffs fail to allege facts that would indicate that Nevada courts might have jurisdiction over defendants).

 

minimum contacts with Nevada. Moreover, Tricarichi failed to demonstrate that respondents reasonably expected their actions to have consequences in Nevada at the time of entering into the alleged conspiracy. Therefore, the district court properly determined that it did not have jurisdiction over Rabobank, Utrecht, and Seyfarth, and we affirm the orders.

_____, J.
Silver

We concur:

_____, J.
Hardesty

_____, J.
Stiglich