138 Nev., Advance Opinion 79

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE TRUST OF PAUL D. BURGAUER REVOCABLE LIVING TRUST. | No. 80466 |

STEVEN BURGAUER, A FORMER
TRUSTEE OF PAUL D. BURGAUER
MARITAL TRUST,
Appellant,
vs.
MARGARET BURGAUER; AND
PREMIER TRUST,
Respondents.

**FILED**

DEC 15 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

STEVEN BURGAUER,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
TREVOR L. ATKIN, DISTRICT JUDGE,
Respondents,
  and
MARGARET BURGAUER; AND
PREMIER TRUST,
Real Parties in Interest.

No. 82067

Consolidated appeal from a district court order granting a petition to distribute trust property (Docket No. 80466) and original petition for a writ of prohibition challenging a contempt order (Docket No. 82067). Eighth Judicial District Court, Clark County; Trevor L. Atkin, Judge.

*Reversed and remanded with instructions (Docket No. 80466); petition granted (Docket No. 82067).*

22-39348

Howard & Howard Attorneys PLLC and James A. Kohl and Gwen Rutar Mullins, Las Vegas,
for Appellant/Petitioner.

Edwards Law Firm and Melissa A. Edwards, Las Vegas,
for Respondent/Real Party in Interest Premier Trust.

The Powell Law Firm and Tom W. Stewart, Las Vegas; Hayes Wakayama and Liane K. Wakayama, Dale A. Hayes, Jr., and Jeremy D. Holmes, Las Vegas,
for Respondent/Real Party in Interest Margaret Burgauer.

---

BEFORE THE SUPREME COURT, EN BANC.

## *OPINION*

By the Court, CADISH, J.:

These matters concern whether the effects test announced in *Calder v. Jones*, 465 U.S. 783 (1984), applies when determining whether a court has specific personal jurisdiction over a nonresident trustee sued in a trust administration case. We conclude that the effects test applies so long as the underlying claims sound in intentional tort, as they do here. Because the plaintiff in this case failed to provide prima facie evidence of the defendant trustee's minimum contacts with Nevada, and any injury the plaintiff suffered in Nevada was not caused by the trustee's contacts with Nevada, the district court erred in concluding that the trustee was subject to personal jurisdiction in Nevada. Accordingly, as to Docket No. 80466, we reverse the district court's jurisdiction order and remand to the district court to vacate all trust administration orders that, consistent with this opinion, require personal jurisdiction over the trustee and to dismiss the petition's claims against him. Because the district court lacks specific

personal jurisdiction to hold the trustee in contempt, we grant the trustee's petition for a writ of prohibition in Docket No. 82067.

## FACTS AND PROCEDURAL HISTORY

In 1987, Paul Burgauer created an estate plan that included the at-issue marital trust. Paul, an Illinois resident, was the settlor of the marital trust. Paul passed away in 2003. His and respondent Margaret Burgauer's son, appellant Steven Burgauer, became the trustee, while Margaret became the beneficiary.[1] Steven moved to Florida in 2012, and the marital trust purchased a home for Margaret in Florida in 2012. Several years later, Steven and Margaret's relationship began to deteriorate, and Margaret moved to Las Vegas to live with another son, James Burgauer. Steven sent an email addressed "Dear Mom" to "undisclosed-recipients," expressing his concern about Margaret's "impaired" judgment and "alcohol and gambling addiction[s]." Steven also claimed that Margaret gave large sums of money to James and effectively allowed James "to invade the Marital Trust illegally which is in exact contravention of [Paul's] intentions." Citing Margaret's spending habits, including, according to Steven, gambling losses and selling securities and incurring capital gains, Steven informed Margaret that he would not make any further distributions from the marital trust to Margaret's accounts and would instead have the trust directly pay Margaret's bills, while approving other individual expenditures on a case-by-case basis.

In January 2017, Margaret informed Steven that she had hired a moving team to remove her personal property from her Florida residence.

---

[1]Paul's estate plan also created a residuary trust; however, the residuary trust is not the focus of this litigation, so we do not address it here.

SUPREME COURT
OF
NEVADA

(O) 1947A

Steven informed her that the house belonged to the marital trust, and thus his permission was required for anyone to enter the house. He requested a list of the items Margaret wanted removed as well as proof of liability coverage for the movers. In March 2017, the movers arrived but could not enter the house. Steven emailed Margaret, stating that he and his family "were away on our ten-day-long family vacation" and that the "unannounced and unplanned visit . . . made it impossible . . . to accommodate your needs."

Also in March 2017, Margaret's attorney, Thomas Burnham, who is licensed in and maintains his office in Michigan, emailed Steven a "Revocation of Power of Attorney" form. Steven replied, identifying several issues he had with the form. He also requested that Burnham no longer communicate with him directly and instead contact specified law firms in either Florida or Illinois. Burnham then sent a letter to Steven's Florida attorney for the trust, Christopher Shipley, to discuss the trust documents. Burnham sent a subsequent letter to Shipley demanding that Steven distribute the net income of the marital trust and make all written disclosures to Margaret regarding the trust.

While this dispute was ongoing, Nevada Elder Protective Services received a report of potential elder abuse regarding Margaret, based on her signing "hundreds of blank checks." The report named James as a person of interest, but the name of the party who made the report was redacted.

In March 2018, Margaret filed the underlying petition requesting that the district court (1) assume jurisdiction over the trust, (2) remove Steven as a trustee, (3) appoint a successor trustee, (4) compel an accounting of the trust, (5) impose personal liability on Steven under

SUPREME COURT
OF
NEVADA

(O) 1947A

4

NRS 165.148, (6) restore the monthly distributions and find Steven's amendments to the trust unenforceable, and (7) compel the production of all trust documents. As to her request to remove Steven as trustee and appoint a successor, Margaret cited "Steven's utter refusal to properly act as a fiduciary of the Marital Trust and his blatant breaches of his duties owed to [her]." She asserted that Steven had "failed to act as a fiduciary" to her because he "has put his personal financial interests above" hers. She also alleged that Steven had (1) defamed her by sending a disparaging and defamatory email to her friends and family, (2) fraudulently interfered with her personal investments, and (3) filed a false report of elder abuse with Nevada authorities. Margaret argued that the district court had jurisdiction over the marital trust under NRS 164.010, which provides that a district court has in rem jurisdiction over a trust domiciled in Nevada and that a trust is domiciled in Nevada "notwithstanding that the trustee neither resides nor conducts business in" Nevada if "[o]ne or more beneficiaries of the trust reside in" Nevada, which she did.

Steven sought dismissal of the petition for lack of personal jurisdiction. He contended that he lacked the minimum contacts necessary for the district court to exercise specific personal jurisdiction over him. Margaret opposed, citing NRS 164.010 and the fact that Steven did not show that another court had assumed jurisdiction over the marital trust. She further asserted that the district court had specific personal jurisdiction over Steven because his tortious conduct satisfied the effects test adopted by the United States Supreme Court in *Calder v. Jones,* 465 U.S. 783 (1984). Margaret contended Steven made sufficient contacts with Nevada by (1) breaching his fiduciary duty in "stripping Margaret of her trust distributions, refusing to provide an accounting, attempting to access

Margaret's personal financial accounts without permission, and placing his financial interests above Margaret's"; (2) sending "defamatory statements regarding Margaret to those located within Nevada and other neighboring states"; (3) interfering with a private contract between Margaret and James; (4) attempting to defraud Margaret by filing a lawsuit against her in Illinois; (5) converting Margaret's personal property by locking her out of her Florida home; and (6) using a fraudulent power of attorney to interfere with Margaret's access to bank accounts.

Denying Steven's motion to dismiss, the district court concluded that "Nevada under the statute, specifically NRS 164.010(2)(e), has jurisdiction." It specified that in rem jurisdiction over the marital trust existed under NRS 164.010 because Margaret, as a beneficiary, resided in Nevada. Further, after confirming Steven as trustee even though Margaret never asked the district court to do so, the district court concluded it "thereby acquire[d] in personam jurisdiction over Steven." In exercising personal jurisdiction over Steven, the district court did not conduct a due process analysis.[2]

After concluding it had jurisdiction, the court temporarily removed Steven as trustee pending an evidentiary hearing and appointed respondent Premier Trust as the temporary trustee of the marital trust. The court also entered a temporary restraining order that prohibited Steven

_____

[2]Although the district court engaged in a due process analysis in determining Nevada had personal jurisdiction over Steven in a separate lawsuit between James and Steven regarding a different trust, that order is irrelevant to whether the court had specific personal jurisdiction over Steven in *this* case between Margaret and Steven. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court.* 122 Nev. 509. 513, 134 P.3d 710, 712-13 (2006) (observing that specific personal jurisdiction is case specific).

from selling or transferring Margaret's personal property or any of the marital trust's property. Steven appealed from the order temporarily removing him as trustee, and the court of appeals dismissed the appeal for lack of jurisdiction. *In re Paul D. Burgauer Revocable Living Tr.*, No. 78872-COA, 2020 WL 3447743, at *1 (Nev. Ct. App. June 23, 2020). However, the court of appeals "remind[ed] the district court that a determination as to whether Nevada courts can exercise personal jurisdiction over Steven requires the court to assess whether he has sufficient minimum contacts with Nevada." *Id.* at *2 n.2.

At a later hearing, the district court granted Premier Trust's petition to distribute the trust property on Margaret's behalf. Margaret subsequently filed an ex parte application for an order to show cause, arguing that Steven should be held in contempt for violating the temporary restraining order. The district court granted the order to show cause and, for the first time, conducted a minimum contacts analysis. Applying the effects test, the district court agreed that Margaret presented sufficient evidence to show that Steven committed several intentional torts against Margaret, reasoning that he "purposefully directed his conduct toward Nevada and Margaret's causes of action [arose] from Steven's purposeful contact or activities in connection with Nevada," such that the court obtained specific personal jurisdiction over Steven. The court then held Steven in contempt for violating the temporary restraining order.

Steven appealed from the order granting the petition to distribute trust property and petitioned for a writ of prohibition as to the contempt order, which were consolidated. The court of appeals vacated the order distributing trust property, remanded the case to the district court to vacate all other orders, and granted the petition for a writ of prohibition,

SUPREME COURT
OF
NEVADA

(O) 1947A

7

concluding that the district court lacked specific personal jurisdiction over Steven. *In re Paul D. Burgauer Revocable Living Tr.*, Nos. 80466-COA & 82067-COA, 2021 WL 4350573, at \*8 (Nev. Ct. App. Sept. 23, 2021). We granted Margaret's petition for review of the court of appeals' decision to address application of personal jurisdiction principles in these circumstances.

## DISCUSSION

*The district court lacked specific personal jurisdiction over Steven*

We review a determination of personal jurisdiction de novo. *Fulbright & Jaworski LLP v. Eighth Judicial Dist. Court*, 131 Nev. 30, 35, 342 P.3d 997, 1001 (2015). When a nonresident defendant challenges personal jurisdiction at the pleading stage, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction is proper by "produc[ing] some evidence in support of all facts necessary for a finding of personal jurisdiction." *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 692, 857 P.2d 740, 743-44 (1993).

As an initial matter, we recognize that NRS 164.010(5)(b) provides a statutory basis for exercising personal jurisdiction over a nonresident trustee under certain circumstances. However, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts" and requires that the nonresident has sufficient minimum contacts with the forum state. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Thus, the district court may only exercise specific personal jurisdiction over a nonresident trustee under NRS 164.010(5)(b) if the statute's requirements are satisfied *and* the plaintiff meets her burden under the Due Process Clause's minimum contacts analysis. *See Whitehead v. Nev. Comm'n on Judicial Discipline*, 110 Nev. 874, 883, 878 P.2d 913, 919 (1994) ("Where a statute is susceptible

SUPREME COURT
OF
NEVADA

(O) 1947A

8

to both a constitutional and an unconstitutional interpretation, this court is obliged to construe the statute so that it does not violate the constitution."); *see also Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021) (reviewing questions of statutory interpretation de novo). There is no meaningful dispute as to NRS 164.010(5)(b)'s application here,[3] so the dispositive issue is whether Margaret met her burden to show Steven had sufficient minimum contacts with Nevada to allow relief to be granted against him.

"A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065. Courts apply a three-part test to determine whether they may exercise specific personal jurisdiction over a defendant. *Catholic Diocese of Green Bay, Inc. v. John Doe 119*, 131 Nev. 246, 249, 349 P.3d 518, 520 (2015). First, the nonresident defendant must have purposefully availed himself of the privilege of acting in the forum state or purposefully directed his conduct to the forum state. *Id.* Second, the cause of action "must arise out of or relate to the defendant's contacts" with the forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, ___ U.S. ___, ___, 141 S. Ct. 1017, 1025 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, ___ U.S. ___, ___, 137 S. Ct. 1773, 1786 (2017)). Third, the exercise of jurisdiction must be reasonable, meaning

---

[3]While NRS 164.010(1) affords in rem jurisdiction over the trust, Margaret's claims in this case have centered on Steven's alleged misdeeds as trustee since its inception. Such claims, seeking relief against Steven personally, require personal jurisdiction over him, and the parties do not argue differently. *See In re Aboud Inter Vivos Tr.*, 129 Nev. 915, 922-23, 314 P.3d 941, 946 (2013) (holding, in a trust case, that in rem jurisdiction did not allow the court to impose personal judgments against parties absent personal jurisdiction over them).

that it would not offend the traditional notions of "fair play and substantial justice." *Catholic Diocese*, 131 Nev. at 250, 349 P.3d at 520. Because the parties dispute whether purposeful availment or purposeful direction analysis applies to resolve the first factor of the minimum contacts analysis, we first address the proper analysis to apply in this case. We then turn to whether Margaret satisfied the minimum contacts analysis.

*The effects test is applicable here to determine specific personal jurisdiction over a nonresident trustee because the underlying trust administration claims sound in intentional tort*

The *Calder* effects test is used to analyze the purposeful direction prong of the minimum contacts analysis. *See, e.g., Walden*, 571 U.S. at 286 (explaining that *Calder* "illustrates the application of" specific personal jurisdiction principles to intentional torts); *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 967 (10th Cir. 2022) ("One way to conduct [the purposeful direction analysis] in tort cases is to consider the 'effects test' of *Calder*." (quoting *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 (10th Cir. 2012))); *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisémitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (explaining that the *Calder* effects test "is normally employed in purposeful direction cases"). Most courts applying the effects test have limited its application to tort cases. *See, e.g., Tricarichi v. Coöperative Rabobank, U.A.*, 135 Nev. 87, 91, 440 P.3d 645, 650 (2019) ("In analyzing whether specific personal jurisdiction exists in a *tort* action, courts apply the 'effects test' derived from *Calder v. Jones*, 465 U.S. 783 (1984)." (emphasis added)); *see also Eighteen Seventy, LP*, 32 F.4th at 966-67 (applying the *Calder* effects test where the plaintiff asserted a tort claim); *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021) ("Because [the plaintiffs'] claims sound in intentional tort, we evaluate specific jurisdiction by reference to the effects

SUPREME COURT
OF
NEVADA

(O) 1947A

10

test." (internal quotation marks omitted)); *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (noting that "a purposeful availment analysis is 'most often used in suits sounding in contract,' whereas a purposeful direction analysis is 'most often used in suits sounding in tort'" (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004))). Courts usually focus on traditional purposeful availment in cases involving contract claims. *See, e.g., Ayla, LLC v. Ayla Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) ("We generally focus our inquiry on purposeful availment when the underlying claims sound in contract . . . ."); *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (explaining that courts use purposeful availment analysis to determine specific personal jurisdiction in contract cases).

A petition like Margaret's, seeking to remove a trustee for breach of fiduciary duties and a trust accounting and revision of the trust administration due to the trustee's breaches, generally sounds in intentional tort. *See Clark v. Lubritz*, 113 Nev. 1089, 1098, 944 P.2d 861, 866 (1997) (holding that "it is well established that when a fiduciary duty exists between the parties, and the conduct complained of constitutes a breach of that duty, the claim sounds in tort regardless of the contractual underpinnings" (quoting *Wash. Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 n.24 (D.C. Ct. App. 1990))). In similar circumstances, other courts have looked to the defendant's purposeful direction as a measure to determine whether it has specific personal jurisdiction over the nonresident defendant by using the three-part *Calder* effects test.[4] *See Thomas*, 2015 WL 12681311, at *4

_____

[4]Steven cites several cases for the proposition that courts use purposeful availment analysis when determining whether a state has specific personal jurisdiction over a nonresident trustee. While those cases

SUPREME COURT
OF
NEVADA

(O) 1947A

(applying the effects test to determine whether the district court had specific personal jurisdiction over the nonresident defendant in a trust administration case); *Janney v. Janney*, No. 09-cv-00259-REB-KLM, 2009 WL 1537895, at *3 (D. Colo. June 1, 2009) (same); *Schneider v. Cate*, 405 F. Supp. 2d 1254, 1262 (D. Colo. 2005) (applying purposeful direction analysis to determine whether a district court had specific personal jurisdiction in a trust administration case); *Dreher*, 986 P.2d at 725 (applying purposeful direction analysis to determine whether a district court had specific personal jurisdiction over a nonresident trustee); 4A Wright & Miller, *Federal Practice and Procedure* § 1069.1 (4th ed. 2022 update) (explaining that "in determining whether there has been 'purposeful availment' of the forum state by the defendant, federal courts explicitly distinguish contract from tort actions" and stating that "[t]he effects test from *Calder v. Jones* is applied to determine purposeful direction"). Thus, the effects test governs

---

used the phrase "purposeful availment," several of them applied the effects test to measure whether the defendants *purposefully directed* acts to the forum state. *See, e.g., Thomas v. Thomas*, No. SACV-14-1096-JLS (RNBx), 2015 WL 12681311, at *4 (C.D. Cal. May 8, 2015); *Janney*, 2009 WL 1537895, at *3; *Schneider*, 405 F. Supp. 2d at 1262; *Dreher v. Smithson*, 986 P.2d 721, 725 (Or. Ct. App. 1999) (using purposeful direction analysis to determine whether a district court had specific personal jurisdiction over a nonresident trustee). This may be because courts use the phrase "purposeful availment" as shorthand for the first prong of the minimum contacts analysis, despite the fact that the first prong is satisfied if the defendant either purposefully avails himself or herself of the privilege of the forum state's laws or purposefully directs his or her actions towards the forum state. *See Schwarzenegger*, 374 F.3d at 802 ("We often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts." (internal citations omitted)).

our inquiry into whether Steven purposefully directed activities to Nevada, such that the district court had specific personal jurisdiction over Steven.[5]

*Steven did not purposefully direct his activities toward Nevada*

Steven contends that the district court erroneously focused on his contacts with Margaret, not his contacts with Nevada, in contravention of binding precedent. He argues that his contacts are insufficient and, thus, cannot satisfy the effects test. We agree.

Under the effects test, purposeful direction is satisfied when the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Tricarichi*, 135 Nev. at 91, 440 P.3d at 650 (quoting *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015)). The plaintiff's contacts with the defendant and the forum are irrelevant. *Id.* at 92, 440 P.3d at 650; *see also Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Instead, the inquiry "focuses on the relationship between the defendant, the forum, and the litigation, and 'the defendant's suit-related conduct,' which 'must create a substantial connection with the forum.'" *Tricarichi*, 135 Nev. at 92, 440 P.3d at 650 (quoting *Walden*, 571 U.S. at 283-84). In other words, the court must "look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with

---

[5]We are not persuaded by Steven's argument that our decision in *In re Davis Family Heritage Trust* controls, such that jurisdiction is proper only if Steven purposefully availed himself of the privilege of acting in Nevada, because, unlike this case, the underlying claims in *Davis* did not sound in tort and the investment trust advisor defendant was not the trustee. 133 Nev. 190, 191-92, 394 P.3d 1203, 1205 (2017).

SUPREME COURT
OF
NEVADA

(O) 1947A

13

persons who reside there," and "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. The defendant can only be "haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

In *Walden*, the Supreme Court held that a Nevada court lacked specific personal jurisdiction over a Georgia TSA agent who seized cash from the plaintiffs at the Atlanta airport because the defendant agent lacked necessary minimum contacts with Nevada. *Id.* at 288. Since none of the defendant's intentional actions occurred in Nevada, his "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 289. The Supreme Court explained that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Because the plaintiffs would have felt the injury resulting from lack of access to their money anywhere they traveled, "the effects of [the defendant's] conduct on [the plaintiffs] are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction." *Id.* Moreover, the fact that the plaintiffs' Nevada attorney contacted the defendant in Georgia was insufficient because a third party's unilateral activity cannot create the defendant's contacts with the forum state. *Id.* at 291; *see also Catholic Diocese*, 131 Nev. at 251, 349 P.3d at 521 (finding no personal jurisdiction because a third party's "unilateral act of seeking employment . . . cannot create jurisdiction over a defendant").

SUPREME COURT
OF
NEVADA

(O) 1947A

14

Here, the district court erred when it concluded Steven had sufficient minimum contacts such that he was subject to the court's specific personal jurisdiction. First, some of the contacts Margaret relies on are either contacts between Steven and Margaret or a third party, or the contacts did not occur in Nevada. Specifically, Margaret alleges that Steven sent "defamatory letters" about Margaret to various companies and government agencies in Nevada; however, Margaret pointed to a sole letter that Steven sent to Margaret's attorney in Michigan. The letter was from a Florida resident to a Michigan resident, and thus, the letter did not constitute a contact with Nevada. While the letter did include a "cc" notation indicating that it was sent to the Nevada Attorney General's Office, it appeared to do so because it alleged that (1) the notary who notarized some of Margaret's statements was not a valid notary, and (2) Margaret's attorney was under investigation by the State Bar of Nevada for the unauthorized practice of law in Nevada. Margaret also claims that Steven filed a false, unsubstantiated report with Nevada's Elder Protective Services; however, the report redacts the name of the individual who filed it, and the report only mentions Steven when Margaret stated that "she felt her son in Florida had made the allegations," to which the social worker "told [Margaret] that [the reporter] information was confidential." As the reporter's identity is unknown, the report is not prima facie evidence of a contact Steven made with Nevada. Margaret further contends that Steven made defamatory statements to her friends and family; however, she cites to her declaration, which does not state that Steven made any defamatory comments to others, and to an email Steven sent to "undisclosed-recipients" but addressed "Dear Mom." Assuming the email is defamatory, the record is unclear as to whom, other than Margaret, the email was sent, or whether

SUPREME COURT
OF
NEVADA

(O) 1947A

15

any other recipients are Nevada residents. Thus, this email is insufficient to establish specific personal jurisdiction because there is no evidence that any recipient other than Margaret lived in Nevada, and the contact between Margaret and Steven is not a contact between Steven and Nevada for specific personal jurisdiction purposes. *Walden*, 571 U.S. at 285-86; *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (finding no personal jurisdiction where the contacts "consisted of a limited number of faxes and other written communications concerning the account, along with a few wire transfers of funds"); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999) ("[I]t is not enough to prove that a defendant agreed to act as the trustee of a trust that benefitted a resident of the forum state.").

Second, while Margaret's remaining contacts allege injuries that she felt in Nevada due to Steven's actions, such injuries are not sufficient under *Walden*. Specifically, Margaret contends that Steven converted over $600,000 from her and stopped making the required trust distributions. However, while Margaret may have felt the effects of those actions in Nevada while she was residing there, "mere injury to a forum resident is not a sufficient connection to the forum" because "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum [s]tate." *Walden*, 571 U.S. at 290; *see also Buskirk v. Buskirk*, 267 Cal. Rptr. 3d 655, 662 (Ct. App. 2020) (finding personal jurisdiction over an Idaho defendant in California because the defendant purposefully availed herself of California's benefits as a former "longtime California resident, a California property owner, a California trust creator and participant, and a California plaintiff"). Because she only felt the injury in Nevada due to her

SUPREME COURT
OF
NEVADA

(O) 1947A

16

residence there and not due to any independent action that occurred in Nevada, these injuries are insufficient to impose specific personal jurisdiction. *See Walden*, 571 U.S. at 290 (concluding that the injury of not having access to funds while in Nevada "is not the sort of effect that is tethered to Nevada in any meaningful way," as plaintiffs failed to show that "anything independently occurred there"); *Tricarichi*, 135 Nev. at 94, 440 P.3d at 652 (concluding that the fact that Tricarichi suffered the injury while residing in Nevada is insufficient to warrant imposing specific personal jurisdiction because the defendant's acts were not connected to Nevada); *cf. Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (holding that a beneficiary's residence in the forum state alone is insufficient to impose specific personal jurisdiction over the nonresident trustee). Accordingly, the district court erred when it concluded that Steven had sufficient minimum contacts with Nevada to warrant imposing specific personal jurisdiction. As Steven lacked the necessary minimum contacts with Nevada, the district court lacked personal jurisdiction over Steven.[6] The court therefore also lacked jurisdiction to hold Steven in contempt for failing to abide by the court's trust administration orders.

## CONCLUSION

The effects test applies to determine whether the nonresident trustee defendant purposefully directed his or her conduct towards Nevada when conducting the minimum contacts analysis for personal jurisdiction purposes when the underlying trust administration case sounds in intentional tort. Here, Margaret failed to provide prima facie evidence of

___

[6]In light of our conclusion, we need not address any of Steven's remaining arguments.

Steven's minimum contacts with Nevada. Moreover, while Margaret suffered an injury in Nevada, the injury's location is fortuitous and not caused by any of Steven's actions in or aimed at the state of Nevada. Absent personal jurisdiction, the court cannot order relief against him. Accordingly, we reverse the district court's order in Docket No. 80466 concluding that it had specific personal jurisdiction and remand to the district court to evaluate the extent to which orders it entered must be vacated in light of the lack of personal jurisdiction over Steven and to dismiss the petition's claims against Steven. Because the district court lacks personal jurisdiction over Steven, we grant Steven's petition in Docket No. 82067 and direct the clerk of this court to issue a writ of prohibition that instructs the district court to vacate the contempt order against him.[7]

_____, J.
Cadish

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Herndon

_____

[7]The Honorable Abbi Silver having retired, this matter was decided by a six-justice court.