*973 OPINION
By the Court,
Steffen, J.:
Respondent Kathleen Amelia Milender[1] obtained a default divorce from appellant Wayne Donovan Milender. The default judgment was entered on October 22, 1990, and the district court filed its findings of fact, conclusions of law and decree of divorce on December 6, 1990.[2] Almost eight months later, on July 29, 1991, the district court granted Wayne’s NRCP 60(b)(1) motion to set aside the default divorce decree. Later, after finding Wayne in contempt for refusing to pay $850 in attorney’s fees awarded to Kathleen, the district court held that payment of the fees operated as a condition to the effectiveness of the order setting aside the default divorce, and that since the condition had not been met, the order dissolving the divorce decree was void. The district court therefore held that the original decree of divorce entered in December of 1990 remained in effect.
Wayne, obviously wanting the property advantages accruing to the status of a widower rather than a divorced former husband, now seeks relief on appeal. We conclude that relief is not warranted as to the divorce, but also conclude that the issue concerning the division of the parties’ property must be redetermined.

*974
FACTS

Kathleen filed a complaint to end her twelve-year marriage to Wayne in August, 1990. A default decree of divorce was entered in favor of Kathleen on October 22, 1990, as a result of Wayne’s election not to appear personally or through counsel. Judge Robin Wright filed findings of fact, conclusions of law, and the decree of divorce on December 6, 1990. As part of its findings, the district court determined that it had jurisdiction over the subject matter and the parties to the divorce action, and that the Milenders were incompatible in their marriage. Among its conclusions of law, the court concluded: (1) that it was ordered and decreed that the bonds of matrimony were “wholly dissolved;” (2) that an absolute decree of divorce was issued to Kathleen, and that both parties were restored to the status of single, unmarried persons; and (3) that Kathleen was awarded, inter alia, $25,000 cash (payable within five days of the date of the decree by Wayne) and a 1983 automobile as her sole and separate property. The decree also awarded each of the parties other specified items of community property. The parties had no minor children.
At a show cause hearing held on May 10, 1991, Wayne appeared in proper person and was again ordered to pay Kathleen the $25,000 award plus interest and attorney’s fees. Later, however, Wayne filed a motion to set aside the default decree; the motion was granted by Judge Kosach on July 29, 1991. The order setting aside the default decree was silent with regard to Kathleen’s attorney’s fees, but noted that Wayne’s motion was filed pursuant to NRCP 55(c) and 60(b), and that the basis for Wayne’s relief was NRCP 60(b)(1).[3]
After entry of the order setting aside the default divorce, Kathleen sought reconsideration of the costs and attorney’s fees expended in obtaining the default decree. Kathleen argued that it would be unjust not to honor her request for costs and fees; she conceded, however, that the court acted within its discretion in vacating the default divorce decree. In response to Kathleen’s motion for reconsideration, the district court entered an order reaffirming its prior order setting aside the default decree, awarded Kathleen $850 in attorney’s fees, and directed Wayne to *975 answer Kathleen’s complaint for divorce. Although Wayne was unresponsive to the order requiring him to pay attorney’s fees, Wayne did file an answer to the complaint in which he requested, inter alia, that the marriage be forever dissolved. It was thus clear that Wayne’s objection to the default decree was not directed at the dissolution of the marriage, but rather the division of the parties’ property.
On January 31, 1992, Kathleen filed a motion to show cause as a result of Wayne’s failure to pay the $850 in fees awarded by the court. Unfortunately, twenty-two days later, Kathleen died. Despite Kathleen’s death, the show cause hearing was held on March 5, 1992, and Wayne was held in contempt of court. The subject of Kathleen’s demise was not addressed. On the occasion of this same hearing, Judge Kosach specifically stated that his order of November 13, 1991, operated as a condition to the setting aside of the default decree; that upon Wayne’s payment of Kathleen’s attorney’s fees and costs, which he had already been ordered to pay, the divorce decree would be set aside. Because Wayne had failed to comply with the court’s order, Judge Kosach ruled that the order setting aside the default divorce decree was void, and that the default divorce decree remained in eifect as originally entered in 1990. Wayne thereafter appealed.[4]

DISCUSSION

The first issue, not raised by either party, but necessarily addressed by this court because it is of a jurisdictional nature, is whether the district court had jurisdiction, absent fraud, to set aside an absolute decree of divorce. Additional factors in the equation concerning this issue are Nevada’s status as a no-fault state, and the fact that both parties to the divorce desired to terminate the marriage. The sole basis for setting aside the divorce decree was to facilitate a reconsideration of the property division set forth in the original default decree. We are unaware of any law or precedent that would have prevented the district court from vacating that part of the decree relating to the property division without setting aside the termination of the marriage.[5]
*976 This court perceives no basis for a district court “undivorc-ing” parties under circumstances where both parties desire to remain divorced, and the only dispute relates to the division of property as provided in the challenged decree. Great mischief may occur where, absent considerations of fraud, a marriage has been “absolutely” dissolved, the parties restored to single status, and after many months of living as unmarried, single persons, the court enters an order “undivorcing” the divorced parties. Intervening relationships, legal and otherwise, could be adversely affected and complicated by the entry of such an order. Moreover, legal and equitable considerations aside, such a procedure invokes precious little support in reason or potential benefit. If the parties had desired to remarry, they could have done so with far less effort and expense by merely undergoing a simple ceremony. To attempt to “undo” an absolute divorce, by supplanting the original decree with a “superseding” order purporting to rescind the absolute divorce that both parties desired to remain in effect and thus restore them to an unwanted married status creates confusion in the record and defies reason. The record reflects no allegations of fraud in obtaining the divorce, no lack of jurisdiction over the parties and their marital status, no pejorative grounds for the divorce (simply lack of compatibility), and no expression of intent by the parties other than that of a mutual desire to be divorced.
Of course, in the instant case, Wayne now desires to posthumously confer the status of a deceased wife upon Kathleen in order to retain her share of the community property. To permit *977 him to do so would engage the judicial process in an elevation of greed and an affront to equity. This we refuse to do.
Unfortunately, the district court erred in deciding that its order setting aside the default decree was subsequently made conditional by its order of November 13, 1991, requiring Wayne to pay Kathleen’s fees and costs. There is simply no district court decision of record that purports to make the order setting aside the default decree conditional upon the payment of such fees and costs or on any other contingency. Although the district court judge may have had some such conditions in mind, they were never reduced to writing and incorporated in any order or minutes of the court. However, it is well established that this court may affirm rulings of the district court on grounds different from those relied upon by the district court. Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 403, 632 P.2d 1155, 1158 (1981).
In pertinent part, NRS 125.130 provides:
1. The judgment or decree of divorce granted under the provisions of this chapter shall be a final decree.
2. Whenever a decree of divorce from the bonds of matrimony is granted in this state by a court of competent authority, the decree shall fully and completely dissolve the marriage contract as to both parties.
(Emphasis supplied.) In accordance with the provisions of the above-quoted statute, Kathleen and Wayne were divorced by a default decree properly entered on December 6, 1990.[6] The fact that during the hearing on Kathleen’s motion for reconsideration of the ruling vacating the default divorce decree, her counsel announced that Kathleen “feels that the court has acted within its discretion to order the Decree filed on May 24, 1991, [obviously counsel intended to state December 6, 1990, as May 24, 1991, was the date of the filing of Wayne’s motion to vacate the default judgment] to be vacated,” is of no moment. Even if counsel’s statement were construed as a concession, it would not confer upon the district court the authority to vacate the final default decree under the circumstances that existed here. Moreover, the fact that counsel’s statement occurred at a hearing prompted by Kathleen’s formal opposition to Wayne’s motion to vacate the *978 default decree indicates that she was not conceding Wayne’s entitlement to have the divorce decree set aside. Furthermore, as previously noted, when Wayne dutifully complied with the district court’s order to answer Kathleen’s complaint, he also requested that the court order the marriage to be forever dissolved. If there is one thing clear on this record, it is that after Kathleen filed her complaint for a divorce and prior to her death, neither party indicated anything less than a desire to have their marriage terminated.
At no time has NRS 125.130 been interpreted to prohibit a district court from modifying alimony or property aspects of a divorce decree without vacating the divorce. Indeed, without reserving jurisdiction, the district court may modify property rights in a decree where the parties provide a written stipulation to the court for such purpose. NRS 125.150(6). Although the district court did not receive a written stipulation from the parties in the instant case, it is clear from the record that Wayne simply wanted to have an opportunity to contest the property distribution contained in the default divorce decree, and that Kathleen did not oppose giving Wayne that opportunity.
Under the fact-specific circumstances of this case, we conclude that the court exceeded its jurisdiction in setting aside the original decree of divorce insofar as it purported to “undo” the final divorce that was entered without fraudulent inducement by a court having jurisdiction in the premises. In setting aside the default decree, the district court granted Wayne’s motion for such relief pursuant to NRCP 60(b)(1) thus impliedly finding that grounds for relief existed in the form of “mistake, inadvertence, surprise, or excusable neglect.” It is clear, however, that no such grounds existed with respect to the divorce. Wayne was fully aware that his wife was filing for divorce and elected not to contest it. Kathleen alleged incompatibility and the divorce was granted without any infirmity pertaining to mistake, inadvertence, surprise, excusable neglect, fraud, or lack of jurisdiction. In short, the marriage was absolutely terminated and dissolved and the only means by which it could have been resuscitated would have been through remarriage. Under the circumstances of this case, the dissolution of the marriage in the original decree was divisible and separate from that part of the decree that addressed the property rights and entitlements of the parties.
Finally, despite our ruling that the district court exceeded its jurisdiction in purporting to undo a valid final, absolute decree of divorce, there are equitable grounds for endorsing the result of our ruling. Equity considers as done that which ought to be done. 30A C.J.S. Equity, § 121, p. 339. Kathleen’s divorce ought to have remained undisturbed. Wayne’s attempt to hold valid that *979 which he clearly desired to terminate before Kathleen’s death olfends equity and will not be aided by this court.
Although, for different reasons, we affirm the district court’s order with respect to the continuing validity of the original default divorce, we are unable to affirm the remainder of the order that would preclude revisiting the property division set forth in the original default decree. Since the NRCP 60(b)(1) relief was granted by the district court and may not be overturned by this court based upon an unwritten, unspoken condition precedent to the order setting aside the decree, we must remand this matter to the district court for further proceedings concerning the division of the community property.[7] Of course, the district court retains complete jurisdiction to divide the property in accordance with the law, equity, and the evidence and to impose whatever lawful sanctions, if any, it may conclude are warranted because of Wayne’s recalcitrant and contemptuous refusal to obey the district court’s order pertaining to the payment of Kathleen’s costs and fees.
Other issues raised and not addressed in this opinion are either without merit or need not be considered given our disposition of this appeal.

CONCLUSION

For the reasons stated above, that part of the district court’s order which purported to reinstate the absolute decree of divorce is affirmed, since the dissolution of the marriage was never effectively invalidated; to the extent that the order entered below purported to invalidate the relief accorded to Wayne pursuant to *980 his NRCP 60(b)(1) motion, insofar as a redetermination of the parties’ entitlement to property is concerned, it is reversed, and this matter is remanded to the district court for purposes of redetermining the proper division of the parties’ property.
Springer and Shearing, JJ., concur.
Young, J., with whom Rose, C. J., joins, concurring in part and dissenting in part:
While I concur in general with the majority’s opinion, I dissent from that portion having to do with the status of the marital relationship in the event a default decree of divorce is set aside.
Initially, I feel compelled to address the rather troubling procedural events taking place here. The majority appears to characterize Wayne in a pejorative way as the greedy perpetrator of all disputes in this case. After a careful review of the limited record, I am of the opinion that one of the dominant features of this case was the relentless pursuit of fees by Kathleen’s attorney,[1] intertwined with the efforts of both parties to terminate a twelve-year marriage. Neither side was entirely blameless for what happened, but I cannot agree with the harsh judgment that Wayne was concerned only with what might euphemistically be described as mundane matters.
Kathleen obtained a default judgment against Wayne which included, among other things, award of the marital home and $25,000.00 in cash to be paid in five days![2] When Wayne failed to pay the $25,000.00 award, Kathleen sought to have Wayne held in contempt and asked for attorney’s fees. The court ordered Wayne to pay the $25,000.00 plus interest and $511.00 in attorney’s fees.
At this point Wayne concluded that things were getting serious and contacted a lawyer. Apparently Wayne, a retired slot machine mechanic, told his counsel that he had not previously employed a lawyer because Kathleen and he had originally decided to work out a property settlement by themselves. Wayne’s counsel required a $1,500.00 “up-front” retainer to ask the court to set aside the decree.
Kathleen was disappointed when the court granted Wayne’s motion to vacate the decree and immediately moved for reconsid *981 eration, complaining that Wayne “stood by while [she] expended $740.00 in attorney’s fees and $110.00 in costs in obtaining said divorce.” Wayne countered by reminding her that he had expended over twice that much in attorney’s fees, namely $1,500.00, to vacate the decree and return the parties to a level playing field. Unpersuaded, Kathleen struck back, arguing that nonetheless Wayne should be ordered to pay her attorney’s fees and costs of $850.00 in obtaining the default because “she did everything right and it was [Wayne] who begged this court for mercy through his ignorance.” Kathleen’s argument fell upon a sympathetic ear and she emerged victorious in this exchange with the court ordering Wayne to pay the fee Kathleen incurred in obtaining the vacated decree.
Unfortunately, the matter of legal fees continued to plague Wayne. An English writer nearly four centuries ago wisely observed that it is easier to open an oyster without a knife than a lawyer’s mouth without a fee. Respecting this common law tradition, Wayne’s lawyer asked for an additional $4,000.00 “up-front.” Wayne, unemployed and lacking this kind of money, cast about in other waters to find an attorney — but the next attorney he approached wanted a $10,000.00 retainer![3] Wayne then concluded — unwisely—that it could be no more expensive if he represented himself!
Meanwhile, back at the district court, Kathleen’s attorney continued a single-minded pursuit of fees from Wayne. A motion was filed to have Wayne held in contempt for failure to pay the $850.00 — although no time limit had been set in the order. Not surprisingly, an additional attorney’s fee was sought in this motion.
Wayne attended the hearing on March 5, 1992, without counsel. Kathleen had died eleven days before and on the day of the hearing her counsel filed Kathleen’s will with the clerk of the court. In what might have been an unduly restricted presentation by Kathleen’s counsel, the case was argued as if she were still alive. The record does not indicate whether Kathleen’s counsel informed the judge of the death so presumably the judge did not know Kathleen was dead when he issued the order later that day!
Wayne testified at the hearing that he had not been able to pay the $850.00 attorney’s fee because all his funds have been used for house payments and utility bills. Wayne’s comment on house payments is puzzling in view of the fact that three months earlier Kathleen’s counsel had recorded what was arguably a defective *982 deed by the clerk of the court purporting to transfer Wayne’s interest in the marital home to Kathleen.[4]
Later that afternoon the district court signed an order holding that the order setting aside (seven months earlier) the default divorce decree had been contingent upon Wayne’s payment of the $850.00 attorney’s fees later awarded. Neglecting to pay the fee, Wayne had triggered the set-aside order and thus breathed new life into the vacated decree eleven days after Kathleen’s death.[5]
Although it has been well said that there are usually no grave legal problems in the dissolution of a matrimonial community with limited assets, the instant case may well be the exception! It is apparent that the dynamics of the generation and collection of fees by counsel for both sides have played a more important role than the legal issues in determining the judicial destinies of the litigants.[6]1 agree with the majority opinion that the order entered after Kathleen’s death should be vacated. The majority predicates its opinion on the premise that the sole basis for setting aside the divorce decree was to facilitate a reconsideration of the original property division. However, in reading the order setting aside the decree, I discern no such limitation. The order merely states that the motion to vacate the default judgment of divorce is granted. I submit that nothing in a close reading could persuade the reader to think that only the property settlement was affected by the order.
This court has previously disapproved of a trial judge sua sponte bifurcating a divorce action. Gojack v. District Court, 95 Nev. 443, 596 P.2d 237 (1979); see also Smith v. Smith, 100 Nev. 610, 613, 691 P.2d 428, 431 n.1 (1984) (“Despite our acceptance of the separate trials in this particular case we wish to emphasize that bifurcated divorce proceedings and the problems they are likely to engender are disfavored and should generally be avoided.”). The majority in the instant case, however, appears to conclude that such a bifurcation properly took place. I submit *983 that our holdings in Gojack and Smith seem to militate against such a result.
While the motion to vacate did contain some discussion of problems in the property settlement, it did not specifically request that only the property aspect of the default decree be vacated. Nothing suggests that the motion was anything other than a motion to vacate the default decree in its entirety. Accordingly, I am of the opinion the majority is reading something into this order that simply is not there. The original decree dissolved the marriage. The purpose of the motion by the husband was to vacate the default decree, not just part of it. I submit that that is what the order clearly and unambiguously did. Generally, when a decree is vacated, it is as if that decree never existed, regardless of the subject of the decree.
The majority expresses concern over the “great mischief’ that may occur if parties who have been divorced by a default decree are restored to their marriage status by a court vacating the decree. Pursuant to such concern, the majority holds that parties may not be “undivorced” in this manner, i.e., that a court may vacate a decree only as to property but not as to marital status. However, in order to reach such a conclusion, it appears that the court is creating an exception to its own duly promulgated rules— an exception for divorce decrees. Or will other judgments be bifurcated on an ad hoc basis in accordance with equities as seen through the spectacles of an appellate court on an incomplete and cold record?
Further, the majority expresses great apprehension as to “intervening relationships” which may result after parties terminate marital status by a default decree. However, I am of the opinion that parties who deliberately obtain changes in status by default make their own choices as to the risk of impermanency and invalidity. This court’s job is not to protect parties from the consequences of their own voluntary actions, even if guessing wrong and electing to receive a default decree. I submit that our court must strive for consistency in its decisions, making changes in the law and rules only when necessary. I can see no reason to carve out an exception to our rules as to vacating decrees merely to facilitate or protect “intervening relationships,” which on the record are not present here.

 The respondent on appeal is actually Sallie Marcum, executrix of Kathleen Amelia Milender’s estate. Kathleen died of leukemia prior to the issuance of the district court order that is the subject of this appeal.

 The original “absolute decree of divorce” was issued on December 6, 1990, by the Honorable Robin Anne Wright. All proceedings that occurred thereafter involving the Milenders were heard and decided by the Honorable Steven R. Kosach.

 In pertinent part, NRCP 60(b)(1) provides:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.]
A motion under this subdivision, (b) does not affect the finality of a judgment or suspend its operation.

 Concomitant with the notice of appeal, Wayne’s counsel filed a notice of death, informing the district court that Kathleen had died on February 22, 1992. Four days later, Wayne’s counsel filed an amended notice of death with an original death certificate attached. On March 5, 1992, counsel for the now-deceased Kathleen, and her mother, Sallie Marcum, filed the Will of Kathleen Milender with the Washoe County Clerk.

 Our ruling does not derogate from the requirement that a divorce proceeding dispose, in one final decree, of “all the issues properly before the court.” Gojack v. District Court, 95 Nev. 443, 445, 596 P.2d 237, 238 *976 (1979). The default judgment entered in the instant case did in fact, dissolve the marriage and dispose of the parties’ property simultaneously. There is therefore no jurisdictional defect that would call into question the validity of the original default divorce decree. Id. at 445, 596 P.2d at 239. By analogy, the result reached in the instant case is supported by our ruling in Smith v. Smith, 100 Nev. 610, 691 P.2d 428 (1984). In Smith, the appellant both requested and failed to object to the district court entering an absolute decree of divorce prior to reaching a division of the parties’ community property. Id. at 613, 691 P.2d at 431. On appeal, the former husband contended that the district court was without jurisdiction to enter orders enforcing the parties’ marital termination agreement because it had previously granted an absolute decree of divorce. We disagreed based upon appellant’s active approval in the adoption of such a procedure at trial, and the fact that the district court had impliedly reserved jurisdiction over the parties’ property settlement by referring the matter to a special master for recommendation. Id. In the instant case, both parties never wavered in their desire to have their marriage terminated. Even after Wayne timely moved to set the decree aside, and thereafter answered Kathleen’s complaint, he requested that the marriage be forever dissolved. In effect, then, we are left with a situation similar to Smith where there was agreement as to the entry of an absolute divorce, but a remaining legal basis for the district court thereafter addressing, separate from the divorce, the division of the parties’ property.

 The default decree issued by the Honorable Robin Wright, provided:
NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the bond of matrimony heretofore and now existing between Plaintiff and Defendant be, and the same are [sic] wholly dissolved, and an absolute Decree of Divorce is hereby granted to the Plaintiff, and each of the parties, hereto are [sic] hereby restored to the status of a single, unmarried person.

 Unfortunately, the district court failed to specify in other than the most general terms why it determined that Wayne was entitled to relief pursuant to NRCP 60(b)(1). The entire order on the subject provided:
This matter comes before the Court on defendant’s Motion to Vacate Default Judgment/Decree filed on May 24, 1991. After a complete review of the file and pleadings therein, the Court finds the following. Defendant has filed his motion in accordance with NRCP 55(c) and 60(b). Having satisfied this Court that the relief requested by defendant is within the statutory provisions set forth in NRCP 60(b)(1), and good cause appearing, defendant’s motion is hereby GRANTED.
Because the district court did not provide a record concerning its reasons for granting Wayne relief under NRCP 60(b)(1) (see criteria for relief in Yochum v. Davis, 98 Nev. 484, 653 P.2d 1215 (1982)), we are unable to determine whether the district court’s ruling was justified. In no event do we have a basis in the record for affirming the district court’s order declaring the order granting Wayne relief under NRCP 60(b)(1) invalid insofar as it applies to the division of the parties’ property.

 Kathleen’s attorney on appeal was not the same attorney that represented her below. Wayne also was represented by a different attorney in the trial court.

 Wayne stated that the only community assets were the marital home and the 1989 travel trailer, the aggregate value of the two items being approximately $27,000.00.

 I venture to say that by this time Wayne would well agree with Lord Brougham, who once defined lawyers as those who rescue your estate from your enemies and then keep it for themselves.

 The record does not indicate whether Wayne was aware of the transaction even though he continued to make house payments.

 Kathleen’s death certificate indicates that she died in a hospital in Kentucky and her status was listed as being a divorced person. The majority seems to believe that somehow Wayne profits from the decree having been set aside. In fact, if the parties were married at her death, it might expose Wayne, as the husband, to being called upon to pay her medical bills.

 As Benjamin Franklin once wrote:
Blind Plaintiff, lame Defendant, share
The Friendly Laws impartial care,
A Shell for him, a Shell for thee,
The Middle is the Lawyer’s Fee.