141 Nev., Advance Opinion 51

IN THE SUPREME COURT OF THE STATE OF NEVADA

TIKTOK, INC.; BYTEDANCE INC.;
BYTEDANCE LTD.; TIKTOK, LTD.;
AND TIKTOK LLC,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
JOANNA KISHNER, DISTRICT
JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 89709

FILED

NOV 06 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Original petition for a writ of prohibition or, alternatively, mandamus challenging a district court order denying a motion to dismiss for lack of personal jurisdiction and for failure to state a claim in a consumer protection action.

*Petition denied.*

O'Melveny & Myers LLP and Jonathan D. Hacker, Stephen D. Brody, and Martha F. Hutton, Washington, D.C., and Daniel M. Petrocelli and Lauren F. Kaplan, Los Angeles, California; Campbell & Williams and J. Colby Wiliams and Philip R. Erwin, Las Vegas,
for Petitioners.

Aaron D. Ford, Attorney General, Ernest Figueroa, Consumer Advocate, and Mark J. Krueger, Chief Deputy Attorney General, Carson City; Claggett & Sykes Law Firm and Michael J. Gayan, Sean K. Claggett, William T. Sykes, Richard K. Hy, Brittnie T. Watkins, Micah S. Echols, Charles Finlayson, and David P. Snyder, Las Vegas; Kemp Jones, LLP, and

J. Randall Jones and Don Springmeyer, Las Vegas; Morris, Sullivan, Lemkul, and Turtzo, LLP, and Will Lemkul, Christopher Turtzo, and Christian Barton, Las Vegas; Nachawati Law Group and Philip D. Carlson and Brian E. McMath, Dallas, Texas; WH Law and David F. Slade, North Little Rock, Arkansas,
for Real Party in Interest.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, CADISH, J.:

Real party in interest State of Nevada filed a complaint against petitioners TikTok, Inc., and its related entities asserting, as is relevant here, violations of the Nevada Deceptive Trade Practices Act (NDTPA). The State alleged that TikTok knowingly designed its social media and short-form online video platform to addict young users, thus inflicting various harms on young users in Nevada, and knowingly made misrepresentations and material omissions about the platform's safety. TikTok moved to dismiss, arguing lack of personal jurisdiction and immunity from liability. The district court denied the motion, determining that it could properly exercise specific personal jurisdiction over TikTok based on conduct purposefully directed at Nevada and that neither the Communications Decency Act (CDA), codified as 47 U.S.C. § 230, nor the First Amendment immunized TikTok from the State's NDTPA claims. TikTok now petitions for writ relief, challenging both rulings.

We agree with the district court as to both issues. First, the State showed that TikTok had the necessary litigation-related contacts to support specific jurisdiction via (1) TikTok's collection of young Nevada users' personal data and its sale of that data to third-party advertisers that target those users and (2) the design of its platform to maximize data collection and ad sales. Second, the CDA § 230 and the First Amendment do not bar the State's NDTPA claims as pleaded. One claim targets TikTok's own alleged misrepresentations and misleading omissions and therefore does not run afoul of the First Amendment or invoke TikTok's traditional editorial functions immunized under the CDA § 230. The other claim that TikTok uses harmful design features does not on its face target any expressive activity or third-party content; nor would TikTok need to alter or remove any third-party content to comply with the alleged duty to design a reasonably safe social media platform for young users. Accordingly, we deny TikTok's petition.

## RELEVANT FACTS

Because this case is before us on a denied motion to dismiss, for purposes of our analysis, we view the following factual allegations from the State's complaint as true and draw all inferences in its favor. *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). TikTok is a free social media platform that allows users to create, upload, and share their own short videos and watch, "like," share, and comment on other users' videos, known as TikToks. The TikTok platform is accessible online through an app on electronic devices, including cell phones. From users' online activity, TikTok collects personal data, including information about messages users send or receive, the content users provide, the way they interact with ads, the time they spend interacting with different

content, the hardware and software they use, and their locations. Although the app is free, TikTok generates revenue from the targeted, data-informed advertising opportunities that it sells to various companies. TikTok is popular with users aged 17 and under, with roughly 19 million U.S.-based young users on the platform as of 2022. TikTok generated roughly $9.4 billion in revenue in 2022, $2 billion of which resulted from ad revenue linked to young users in the U.S. TikTok has community guidelines that prohibit users from posting certain types of content, including sensitive and unlawful content. Those guidelines state that TikTok is "deeply committed to ensuring . . . a safe and positive experience for people under the age of 18."

The principal interface of the app is the "For You" feed, which presents an endless scroll of videos that TikTok recommends to users based on their activity on the app and TikTok's algorithm. A new video automatically appears and begins playing when the user finishes watching a TikTok (autoplay). TikTok's algorithm uses signals from the user's interactions with various content and ads to personalize the scroll. To access the app, users must create an account and agree to TikTok's terms of service and privacy policy. TikTok's user interface also displays (either publicly or privately) a user's number of "friends" as well as the number of interactions, views, likes, dislikes, reactions, and comments on user-provided content (quantified popularity). Hashtag challenges are a popular trend on TikTok, wherein users take some action, record it, and post with a particular hashtag—e.g., the complaint refers to the "Blackout Challenge," where a user asphyxiates themself on camera, and the "Nutmeg Challenge," where the user attempts to ingest a large amount of nutmeg on camera, inducing hallucinations and other side effects.

TikTok sells digital coins to users that the users can send to their favorite TikTok content creators as gifts. TikTok also allows users to post live content that is only available in that moment (livestreaming). To drive engagement, TikTok uses "push notifications" to alert users to new content that might interest the user or otherwise entice them back to the app with messages, buzzes, lights, or sounds. These notifications may arrive at any hour, day or night. TikTok also makes available augmented-reality or aural filters that users can apply to their own videos and photos, including cosmetic filters that alter a user's appearance to make them more attractive—e.g., the "Bold Glamour" filter, which changes facial features and simulates makeup.

TikTok recently added features that could be considered well-being initiatives. For example, the app prompts users who spend more than 100 minutes on the app to consider taking a break. TikTok users under the age of 15 on average spend roughly 105 minutes a day on TikTok, with 10 percent of those users spending more than 4 hours a day on the app.

TikTok issued a publicly available statement on "Youth Safety and Well-Being," stating:

> Youth safety is our priority. We do not allow content that may put young people at risk of exploitation, or psychological, physical, or developmental harm. This includes child sexual abuse material (CSAM), youth abuse, bullying, dangerous activities and challenges, exposure to overtly mature themes, and consumption of alcohol, tobacco, drugs, or regulated substances. If we become aware of youth exploitation on our platform, we will ban the account, as well as any other accounts belonging to the person.

TikTok, Ltd.'s CEO stated in testimony to Congress that "[TikTok] will keep safety—particularly for teenagers—a top priority[.]" TikTok has made similar comments at national and state PTA meetings. TikTok's Community Guidelines also state that TikTok "do[es] not allow showing or promoting disordered eating or any dangerous weight loss behaviors" or "sexual activity or services" and does not allow the promotion of dangerous or criminal activities that may harm people, animals, or property. TikTok has also acknowledged problematic "filter bubbles," where a "user encounters only information and opinions that conform to and reinforce their own beliefs, caused by algorithms that personalize an individual's online experience." These filter bubbles result in content with drugs, alcohol, sex, and violence being placed in young users' For You feed because "the app doesn't differentiate between videos it serves adults and minors."

As of mid-2022, roughly 49 percent of all Nevadans were active TikTok users. Using users' personal data and location, TikTok allows advertisers inside and outside of Nevada to target Nevadans who are on the TikTok app. TikTok also engages in outdoor advertising, including billboards in Las Vegas and Reno. TikTok gave a grant to an elementary school PTA in Las Vegas and attended virtual PTA events, including an event that Nevada's PTA president attended. News stories have been published about kids in Nevada using TikTok in both productive and harmful ways. Lucy Diavolo, *After Her Viral Tik Tok Calling for a Student Strike, Nevada Teen Gillian Sullivan Says Her Classmates Are Still Ready to Mobilize*, Teen Vogue (Aug. 29, 2019), https://www.teenvogue.com/story/viral-tik-tok-student-strike-nevada-teen-gillian-sullivan; Jarah Wright, *'Man up, plead out': Family of Andreas Probst calls on teens to plead guilty,*

SUPREME COURT
OF
NEVADA

(O) 1947A

6

KTNV (Oct. 18, 2023), https://www.ktnv.com/news/man-up-plead-out-family-of-andreas-probst-calls-on-teens-to-plead-guilty.

## PROCEDURAL HISTORY

The State filed a complaint against TikTok, asserting claims for deceptive and unconscionable acts or practices in violation of the NDTPA and other torts. The State alleged that TikTok's platform uses harmful design features intended to keep young users on the app for as long as possible in order to maximize advertising revenue, including (1) low-friction variable rewards (endless scroll and auto-play), (2) social manipulation tools (quantified popularity and coins), (3) ephemeral content, (4) push notifications, (5) visual filters, and (6) ineffective and misleading parental controls and well-being initiatives. The State also alleged that, driven by commercial gain, TikTok publicly and knowingly made several misrepresentations and omissions to deceive consumers about young users' safety on the platform. To support this allegation, the State cited internal TikTok documents acknowledging that young users use the platform compulsively and access harmful content in their For You feed due to filter bubbles. The State further alleged that because of young users' unhealthy engagement with the TikTok app, they suffer mental, physical, and privacy harms.

TikTok moved to dismiss, arguing that (1) the district court lacks personal jurisdiction over it because the State's claims are not based on conduct that TikTok purposefully directed at Nevada, (2) the CDA § 230 immunizes TikTok from liability for third-party content published on the TikTok platform, and (3) the First Amendment to the U.S. Constitution and

SUPREME COURT
OF
NEVADA

(O) 1947A

the analogous provision of the Nevada Constitution[1] protect TikTok's decisions about how to select, organize, and present third-party user-generated content. The district court denied TikTok's motion in part, concluding that it had specific personal jurisdiction over TikTok and that the State's NDTPA claims were not barred by the CDA § 230 or the First Amendment. The court dismissed the other claims without prejudice. TikTok now petitions for extraordinary writ relief, challenging the district court's personal jurisdiction, CDA § 230, and First Amendment rulings.

## DISCUSSION

Writ relief is an extraordinary remedy, and whether to entertain a writ petition on its merits lies solely within our discretion. *Smith v. Eighth Jud. Dist. Ct.*, 107 Nev. 674, 677, 679, 818 P.2d 849, 851, 853 (1991). A writ of prohibition may issue to restrain district courts or other tribunals from exceeding the limits of their jurisdiction, while a writ of mandamus may issue "to compel an act that the law requires." *Archon Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 816, 819, 407 P.3d 702, 706 (2017). This court typically declines considering petitions that challenge orders denying motions to dismiss, *Buckwalter v. Eighth Jud. Dist. Ct.*, 126 Nev. 200, 201, 234 P.3d 920, 921 (2010) (noting that "[n]ormally this court will not entertain a writ petition challenging the denial of a motion to dismiss"); however, the rule is not absolute, *see Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 122 Nev. 132, 142-43, 127 P.3d 1088, 1096 (2006). Such petitions

---

[1]Because Article 1, Section 9 of the Nevada Constitution "affords no greater protection to speech activity than does the First Amendment to the United States Constitution," *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 722, 100 P.3d 179, 187 (2004), our resolution of the First Amendment issue in this case also resolves TikTok's argument under the Nevada Constitution.

may be appropriate for review where the district court lacked jurisdiction to decide a matter, *Viega GmbH v. Eighth Jud. Dist. Ct.*, 130 Nev. 368, 374, 328 P.3d 1152, 1156 (2014) (observing that prohibition is available to correct an invalid exercise of personal jurisdiction), or where an important legal issue needs clarification and judicial economy and public policy considerations "weigh in favor of considering the petition," *Lorton v. Jones*, 130 Nev. 51, 54, 322 P.3d 1051, 1053 (2012).

TikTok's petition meets the criteria for writ review, raising important issues of law that require our clarification—chiefly, whether a social media platform is subject to personal jurisdiction in Nevada and whether the CDA § 230 and the First Amendment protect such a platform from the State's NDTPA claims, such that the district court was required to dismiss the State's complaint. Therefore, we exercise our discretion to consider the petition.

*The district court properly exercised personal jurisdiction over TikTok*

We review de novo a district court's determination regarding personal jurisdiction. *Tricarichi v. Coöperatieve Rabobank, U.A.*, 135 Nev. 87, 91, 440 P.3d 645, 650 (2019). "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065(1). At the motion to dismiss stage, the State, as the plaintiff, bears the burden of making a prima facie showing that personal jurisdiction is proper by "produc[ing] some evidence in support of all facts necessary for a finding of personal jurisdiction." *Trump v. Eighth Jud. Dist. Ct.*, 109 Nev. 687, 692, 857 P.2d 740, 744 (1993). The district court must accept properly supported proffers of evidence as true and resolve factual disputes in favor of the plaintiff. *Id.* at 693, 857 P.2d at 744.

To establish a prima facie case for specific personal jurisdiction over TikTok, the State was required to demonstrate that TikTok's claim-related conduct created sufficient minimum contacts with the state to make the exercise of jurisdiction fair and reasonable. *In re Paul D. Burgauer Revocable Living Tr.*, 138 Nev. 801, 806, 521 P.3d 1160, 1165 (2022). In determining whether the State met that initial burden, we apply a three-part test. *Id.* First, TikTok must have purposefully availed itself of the privilege of acting in the state or purposefully directed its conduct to the state. *Id.* Second, the claims must arise from or relate to that purposeful contact. *Id.* Third, the exercise of jurisdiction must be reasonable so that it does not offend traditional notions of "fair play and substantial justice." *Id.* (internal quotation marks omitted).

*The State satisfied the first prong of specific jurisdiction, purposeful direction, under the* Calder *effects test*

When the claims sound in intentional tort, as they do here, we use the *Calder* effects test to analyze the purposeful direction prong.[2] *Id.* at 806, 521 P.3d at 1166 (referring to *Calder v. Jones*, 465 U.S. 783 (1984)). Under this test, "purposeful direction is satisfied when the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 808-09, 521 P.3d at 1167 (internal quotation marks omitted). We look to the defendant's contacts with the forum state itself and not "random, fortuitous, or attenuated" contacts with persons who

---

[2]We decline to address the State's suggestion—raised for the first time at oral argument—that the *Calder* effects test may not apply to the NDTPA claims.

reside there. *Id.* at 809, 521 P.3d at 1167 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

TikTok challenges the district court's conclusion as to the second prong of the *Calder* test, i.e., that TikTok purposefully directed its conduct at Nevada by maintaining a continuous and systematic presence in the state via its online platform, which "is downloaded to phones and/or other devices" in Nevada "hundreds of thousands of times." TikTok argues that purposeful direction was not shown through this conduct because operating an interactive website accessible to users worldwide does not constitute an intentional act targeted at Nevada.

While we disagree with the district court's determination that Nevada residents' downloading of the app to their phones constitutes a "physical presence" in the state for purposes of establishing express aiming under the effects test, we conclude that the express-aiming prong is satisfied by TikTok's targeted marketing and data-collection activities. This conclusion aligns with the Ninth Circuit's reasoning in *Briskin v. Shopify*, which clarified, in the context of web-based companies, that the express-aiming prong may be met through contacts involving data collection and marketing directed at forum residents, whether or not the targeting is differential or tailored to the forum. 135 F.4th 739, 757-58 (9th Cir. 2025). In *Briskin*, the plaintiff asserted unfair and deceptive business practices under California law arising out of Shopify's collection of user data for sale to third-party merchants. *Id.* at 748-49. Overruling prior precedent, the en banc court determined that Shopify, an online point-of-sale platform with entities incorporated in Canada and Delaware but doing business in all 50 states, was subject to personal jurisdiction in California because "[a]s a part of its regular course of business, Shopify is alleged to target California

SUPREME COURT
OF
NEVADA

(O) 1947A

consumers to extract, collect, maintain, distribute, and exploit for its own profit . . . personal identifying information that it extracts from the software it permanently installs on [California consumers'] devices." *Id.* at 755-56. The court noted that Shopify allegedly knew the location of consumers after its tracking software was installed onto their devices. *Id.* at 756. The court rejected Shopify's argument that because it operates nationwide, Shopify did not expressly aim its conduct at California, which accounted for only 8% of its worldwide merchants. *Id.* at 757. The court reasoned that "requiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents." *Id.* at 758.

We agree with the analysis in *Briskin*, which supports that the State made a prima facie showing that TikTok expressly aimed its conduct at Nevada based on the facts shown. While operating a website accessible in many states in and of itself does not constitute express aiming, *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (explaining that operating "a passive website alone cannot satisfy the express aiming prong"), TikTok's interactive social media business model depends on capturing users' attention in order to collect demographic and behavioral data that it then sells to third-party advertisers. The State alleged and supported with evidence that TikTok knew of and pursued its market success in Nevada and that young users have struggled with limiting their TikTok use due to the at-issue design features. That TikTok engaged in marketing in Reno and Las Vegas and in outreach to an elementary school PTA in Nevada further supports the district court's

conclusion that TikTok expressly aimed its conduct at Nevada. We therefore reject TikTok's argument that a more forum-specific focus was required simply because its app is accessible globally and Nevada accounts for only a small percentage of TikTok's overall customer base. As *Briskin* recognized, differential targeting is not required so long as TikTok made the requisite purposeful contact and availed itself of the Nevada market. The State made a prima facie showing of such contact under the *Calder* effects test.[3]

*The State satisfied the second and third prongs of the specific jurisdiction test, relationship and reasonableness*

TikTok challenges the district court's determination on the second prong of specific personal jurisdiction analysis, namely, that the TikTok app's presence on young users' devices in Nevada gives rise or relates to the State's claims and resultant alleged harms. TikTok contends that such conduct fails under the "arise out of or relate to" prong because the State did not allege that TikTok made any statements or omissions or developed any design elements in Nevada.

TikTok's arguments are like those rejected by the U.S. Supreme Court in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). In that case, Ford was sued for products liability in Montana and Minnesota after its cars were involved in accidents in those states. *Id.* The Court held that the "[or] relate to" component of the second prong "contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362. The Court observed that Ford

---

[3]TikTok does not meaningfully challenge the district court's conclusion as to the first and third prongs of the *Calder* effects test as it relates to purposeful direction.

SUPREME COURT
OF
NEVADA

(O) 1947A

"systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege[d] malfunctioned and injured them," through Ford's advertising, sales, and maintenance and repair services offered in those states. *Id.* at 365. From this conduct, the Court held there was a "strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." *Id.* (internal quotation marks omitted).

The same holds true here. Although TikTok did not design its platform or make the alleged misrepresentations and omissions in the forum, TikTok's pervasive digital presence in Nevada—through the one million-plus Nevada users from whom TikTok collects personal data to sell targeted advertising—parallels Ford's extensive physical presence in Montana and Minnesota that satisfied the second prong in *Ford Motor Co.* The State alleged that the design features and TikTok's misrepresentations and omissions about the platform's safety were intended to keep young users in Nevada addicted to the TikTok platform and spending as much time as possible viewing TikToks, so that it could profit from the data collection and revenue from advertising aimed at Nevada. Those allegations, along with evidence the State submitted, support that TikTok "systematically serves" and profits from these young users, *id.*, making Nevada the "most natural" forum for the State to sue TikTok for the alleged harm to its young residents, as the alleged harmful actions by TikTok relate to the purposefully directed marketing, data collection, and advertising, *see id.* at 370. Therefore, the State's claims sufficiently relate to TikTok's purposefully directed contacts under the second prong of the specific jurisdiction test. The third prong of the specific jurisdiction test is not at issue here, as TikTok does not meaningfully argue that the exercise of

personal jurisdiction would be unreasonable. Accordingly, the district court correctly concluded that the State made a prima facie showing of personal jurisdiction. *See Milender v. Marcum*, 110 Nev. 972, 977, 879 P.2d 748, 751 (1994) ("[I]t is well established that this court may affirm rulings of the district court on grounds different from those relied upon by the district court.").

*The CDA § 230 and the First Amendment do not immunize TikTok from the State's NDTPA claims at the pleading stage*

Whether the CDA § 230 provides immunity is an issue of law that we review de novo, even in the context of a writ petition challenging a denial of a motion to dismiss. *Heights of Summerlin, LLC v. Eighth Jud. Dist. Ct.*, 140 Nev., Adv. Op. 65, 556 P.3d 959, 964 (2024) (observing, in the context of considering whether a federal act immunized a defendant from liability, that Nevada appellate courts review legal questions raised in writ petitions de novo). We similarly review de novo a district court's decision on a motion to dismiss under NRCP 12(b)(5). *Nelson v. Burr*, 138 Nev. 847, 850, 521 P.3d 1207, 1210 (2024). "Nevada is a notice-pleading state; thus, our courts liberally construe pleadings to place into issue matters which are fairly noticed to the adverse party." *W. States Constr., Inc. v. Michoff*, 108 Nev. 931, 936, 840 P.3d 1220, 1223 (1992). The State's NDTPA claims must be dismissed for failure to state a claim "only if it appears beyond a doubt that [the State] could prove no set of facts, which, if true, would entitle it to relief." *Buzz Stew, LLC*, 124 Nev. at 228, 181 P.3d at 672.

The CDA § 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Congress passed the CDA "to promote the continued

 

development of the Internet and other interactive computer services." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 681 (9th Cir. 2019) (quoting 47 U.S.C. § 230(b)(1)). The statute effectively immunizes website operators from liability for third-party content, material, or speech that is posted on the operator's website. *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162-63 (9th Cir. 2008) (en banc). That immunity extends to claims that seek to hold an internet service provider liable based on its exercise of "traditional editorial functions." *Batzel v. Smith*, 333 F.3d 1018, 1031 n.18 (9th Cir. 2003) (internal quotation marks omitted). A defendant is thus immune from state law liability under the CDA § 230 if it is "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).

Pointing to *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021), the district court concluded that § 230 of the CDA did not immunize TikTok because the State's complaint did not seek to place TikTok in the shoes of third-party content creators, but

> rather, the Complaint places [TikTok] in [its] own shoes for designing [its] platform in a way that [it] know[s] to be harmful to children and teens, and for making [its] own misrepresentations and material omissions about the safety of [its] platform. [TikTok's] liability in this case does not depend on any of the third-party content posted or distributed by [its] platform, but rather the harmful design features of the platform itself. To comply with the duties alleged in the Complaint, [TikTok] would not need to alter any third-party content or otherwise engage in publication activities. Instead, [it] would

SUPREME COURT
OF
NEVADA

(O) 1947A

16

> need to change only its own misstatements, omissions, marketing, platform development, and design decisions.

TikTok claims that designing algorithms and making decisions about the structure and operation of a social media platform inherently entail choices about what content can appear, and those types of choices fall within the purview of traditional publisher functions. TikTok frames the State's allegations about the TikTok platform's design as an argument that sustained viewing of third-party content leads to unhealthy addiction. It contends that the State's misrepresentation claim depends on allegations that TikTok did not do enough to block and remove content, which are core publishing functions.

Those arguments implicate the second and third components of the *Barnes* test, namely, whether the State's NDTPA claims seek to treat TikTok as a publisher of information provided by third-party users such that the CDA § 230 immunity applies. *Barnes*, 570 F.3d at 1100-01. Determining whether the *Barnes* test is met here requires "engag[ing] in a careful inquiry into the fundamental duty invoked by the [State] and determining if it derives from [TikTok's] status or conduct as a publisher or speaker." *Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1178 (9th Cir. 2024), *cert. denied sub nom. Est. of Carson Bride v. Yolo Techs., Inc.*, ___ U.S. ___, 145 S. Ct. 1435 (Mar. 24, 2025) (internal quotation marks omitted).

In *Lemmon*, the case on which the district court relied, the parents of two boys who died in a high-speed car accident sued the maker of Snapchat (Snap), alleging that through Snap's negligent design of the app, it encouraged their sons to drive at dangerous speeds, causing their deaths. 995 F.3d at 1087. The parents alleged that Snap knew or should have known that its "Speed Filter" and reward system design features

worked in tandem to incentivize young drivers to drive at dangerous speeds, citing news reports and other accidents linked to the Speed Filter. *Id.* at 1089-90. On Snap's motion, the trial court dismissed the complaint, finding that the CDA § 230 immunized Snap from liability. *Id.* at 1090.

The Ninth Circuit reversed the trial court's decision, concluding that the parents' claim did not seek to treat Snap as a publisher or speaker of third-party content because it turned on Snap's design of Snapchat. *Id.* at 1094. The court reasoned that "[t]he duty underlying such a claim differs markedly from the duties of publishers as defined in the CDA" because "[m]anufacturers have a specific duty to refrain from designing a product that poses an unreasonable risk of injury or harm to consumers." *Id.* at 1092. On the other hand, "entities acting solely as publishers—i.e. those that review material submitted for publication, perhaps edit it for style or technical fluency, and then decide whether to publish it—generally have no similar duty." *Id.* (internal citations and quotation marks omitted). The court held that Snap could have satisfied its duty by taking "reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that Snapchat's users generate." *Id.* The court also determined that the parents' negligent-design claim did not rely on "information provided by another information content provider," *id.* at 1094, that "internet companies remain on the hook when they create or develop their own internet content," *id.* at 1087, and that the boys' interactions with the reward system and Speed Filter induced the dangerous speeding—not the act of publishing the boys' Snaps, *id.* at 1093.

We are persuaded by the reasoning in *Lemmon* and conclude that the district court properly applied that decision in rejecting TikTok's CDA § 230 immunity argument. On its face, the State's complaint does not

seek to hold TikTok liable for any third-party content that it publishes. The State's first NDTPA claim under NRS 598.091 targets TikTok's alleged own knowingly false statements and omissions to regulators and the public about young users' safety on the platform. Though the State references problematic third-party content in its complaint—such as TikTok "challenge" trends and videos depicting drugs, sex, and suicide—it does so to support its claims that (1) TikTok made misrepresentations about its enforcement of the platform's community guidelines and the safety measures that TikTok implements and (2) TikTok knows that young users experience mental, physical, and privacy harms due to their compulsive TikTok use. Therefore, consistent with the *Barnes* analysis, this claim does not trigger CDA § 230 immunity because the State seeks to hold TikTok liable for its own statements and omissions and resulting duties to users with only a tangential relationship to third-party content. *See Bride*, 112 F.4th at 1179 (reversing a district court decision dismissing a misrepresentation claim based on CDA § 230 immunity because the tech company's own statements to users about unmasking and removing abusive users constituted an "outwardly manifested intention" that created an expectation of safety among users and guardians of young users, thus "generat[ing] a legal duty distinct from the conduct at hand" (internal quotation marks omitted)).

As to the State's second NDTPA claim under NRS 598.0923, it explicitly targets the design of TikTok's platform rather than the content of posted videos, alleging that TikTok "willfully committed unconscionable trade practices in designing and deploying" features intended to exploit young users' lack of knowledge or capacity to appreciate the risks inherent in the platform's design. That the complaint's allegations specifically target



the platform's content-neutral design features distinguishes this case from *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), a case that TikTok argues supports immunity. In *Moody*, the Court considered whether state laws restricting social media platforms' control over the ideological mix of third-party speech displayed in user feeds offended the First Amendment. 603 U.S. at 717. The Court explained that "select[ing] and shap[ing] other parties' expression into their own curated speech products" is a traditional publishing activity subject to protection. *Id.* at 716-17; *see also Barnes*, 570 F.3d at 1102 (explaining that "reviewing, editing, and deciding whether to publish or to withdraw from publication" are traditional publisher functions under the CDA § 230). But unlike *Moody*, this case does not concern restrictive state laws and the State, as the plaintiff, explicitly *does not* seek to curtail or alter the mix of third-party content that TikTok publishes—it only purports to challenge the design features that TikTok implements to keep users on the platform as long as possible, no matter the type of third-party content that may appear in a user's feed.

That some of these features interact with third-party content does not alter that the State seeks to hold TikTok liable for "violating its *distinct duty to design a reasonably safe product*," rather than for publishing user content. *Lemmon*, 995 F.3d at 1092 (emphasis added). Thus, the State's claims arise from TikTok's alleged duty to provide a reasonably safe social media app rather than any failure to edit or remove third-party content. *See Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 645 (9th Cir. 2025) (holding that the CDA § 230 did not immunize Twitter from liability for a design defect based on the platform's lack of a reporting infrastructure for child exploitation material because "Twitter could fulfill its purported duty to cure reporting infrastructure deficiencies without monitoring, removing,

SUPREME COURT
OF
NEVADA

(O) 1947A

20

or in any way engaging with third-party content"). Therefore, at the motion to dismiss stage, we cannot say that there is no set of facts that, if true, would entitle the State to relief on its NDTPA claims and not be subject to immunity based on the CDA § 230.

For similar reasons, the First Amendment does not bar the State's NDTPA design-based claims as pleaded. We recognize that curating third-party content and moderating that content can amount to protected expressive activity under the First Amendment, per *Moody*. 603 U.S. at 718. However, *Moody* expressly declined to consider how the First Amendment would apply to algorithms and other design features that employ user-interaction data to shape an addictive user experience. *Id.* at 736 n.5 ("We therefore do not deal here with feeds whose algorithms respond solely to how users act online—giving them the content they appear to want, without any regard to independent content standards."); *see also NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1021 (9th Cir. 2025) (recognizing "that some personalized recommendation algorithms may be expressive, while others are not, and that inquiry is fact intensive"). Moreover, the State explicitly disclaims any intent to impose liability based on any content or its curation and thus alleges a claim that does not target expressive First Amendment activity.

We also agree with the district court that the First Amendment does not bar the State's misrepresentation and omission claims, as the First Amendment does not protect inherently misleading commercial speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). The misleading aspect is key to the State's claim that TikTok misrepresented or omitted information on its website, in its community guidelines, and in presentations to PTAs and the U.S. Congress. Though

SUPREME COURT
OF
NEVADA

(O) 1947A

TikTok argues that its representations regarding the safety of young users on the platform are protected under the First Amendment as subjective statements of opinion or aspiration, the State points to several affirmative statements that go beyond mere aspiration or opinion, such as statements in the community standards that "[TikTok] do[es] not allow content that may put young people at risk of exploitation, or psychological, physical or developmental harm," including "child sexual abuse material (CSAM), youth abuse, bullying, dangerous activities and challenges, exposure to overtly mature themes, and consumption of alcohol, tobacco, drugs, or regulated substances." Thus, the State has asserted claims that are not subject to dismissal based on the First Amendment. Accordingly, the district court correctly denied the motion to dismiss because there are facts that could be shown to entitle the State to relief on its NDTPA claims without invoking the protections of the CDA § 230 and the First Amendment.

## CONCLUSION

The district court properly exercised specific personal jurisdiction over TikTok because the State's NDTPA claims target TikTok's alleged misrepresentations and unconscionable design elements that addict Nevada's young users to the TikTok platform. Those claims sufficiently relate to TikTok's purposeful Nevada contacts in collecting young users' personal data and selling it to advertisers targeting those Nevada users, thus satisfying due process requirements. The district court also properly denied the motion to dismiss these claims because the CDA § 230 and First Amendment do not protect TikTok from liability for its own allegedly misleading statements and omissions about safety risks to young users or for allegedly harmful design features that are not based on third-party

content or its own expressive activity. Accordingly, we deny TikTok's petition.

_____, J.
Cadish

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., concurring:

I join the opinion in full. I write separately only to note that, in a proper case, this court should evaluate the anomalous burden imposed by the standard for evaluating personal jurisdiction challenges that this court announced in *Trump v. Eighth Judicial District Court*, 109 Nev. 687, 857 P.2d 740 (1993). In my view, and consistent with other jurisdictions, a plaintiff opposing a motion to dismiss for lack of personal jurisdiction can rest on the well-pleaded allegations of the complaint and need only provide additional evidence to support jurisdiction where those pleadings are controverted by the defendant. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1351 (4th ed. 2025) (explaining that when reviewing a motion to dismiss for lack of personal jurisdiction, federal courts "take as true the allegations of the nonmoving party with regard to the jurisdictional issues and resolve all factual disputes in his or her favor"); *see also Del Valle v. Trivago GmbH*, 56 F.4th 1265, 1271-72 (11th Cir. 2022) (accepting "the factual allegations in the complaint as true to the extent they are uncontroverted" when reviewing a district court's dismissal for lack of personal jurisdiction). I hesitate to invoke *Trump* in a way that reaffirms a heavier burden than that.

_____*Pickering*_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A