141 Nev., Advance Opinion 65

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ROBERTO FRANCESCHI, Appellant, vs. LG CHEM, LTD., A FOREIGN COMPANY; AND LG CHEM AMERICA, INC., A DELAWARE CORPORATION, Respondents. | No. 87802 **FILED** DEC 18 2025 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a district court order, certified as final under NRCP 54(b), granting motions to dismiss for lack of personal jurisdiction. Eighth Judicial District Court, Clark County; Maria Gall, Judge.

*Affirmed.*

Claggett & Sykes Law Firm and David P. Snyder, Sean K. Claggett, Brian Blankenship, Micah S. Echols, and Charles L. Finlayson, Las Vegas; Davis Law Group, PLLC, and David S. Davis, Las Vegas, for Appellant.

Lewis Brisbois Bisgaard & Smith LLP and Wendy S. Dowse, Indian Wells, California, and Laureen Frister, Las Vegas, for Respondents.

BEFORE THE SUPREME COURT, PICKERING, CADISH, and LEE, JJ.

*OPINION*

By the Court, LEE, J.:

This case presents a question of personal jurisdiction. Appellant Roberto Franceschi, a Nevada resident, was injured when a

25-55100

lithium-ion battery exploded in his front pocket, causing severe burns. Franceschi sued the battery manufacturer, respondent LG Chem, a Korean company, and its American subsidiary, respondent LG Chem America, Inc. (collectively, LG) for products liability in Nevada district court. The court, concluding that Franceschi's claims were insufficiently related to LG's contacts with Nevada, dismissed the lawsuit for lack of personal jurisdiction. Franceschi now appeals.

We hold that the district court did not err in dismissing the lawsuit for lack of personal jurisdiction. While LG purposefully availed the Nevada forum through certain specific contacts, the harm alleged by Franceschi did not arise out of or relate to those contacts. LG placed lithium-ion batteries into the forum through an end-product stream of commerce, meaning it sold the batteries to sophisticated companies for incorporation in specific applications, like power tools, which were eventually sold in Nevada. However, Franceschi's injuries arose from an individual battery cell that arrived in the forum through a distinct stream of commerce—a derivative-product stream of commerce—through an unknown third-party vendor; LG did not sell individual battery cells for consumer use in Nevada. This disconnect between LG's contacts with the forum and the harm alleged by Franceschi forecloses the exercise of personal jurisdiction over LG. Accordingly, we affirm.

*FACTS AND PROCEDURAL HISTORY*

Franceschi purchased standalone, model 18650 lithium-ion batteries (18650s) from a vape shop in Nevada. The 18650s were sold individually, without packaging, and Franceschi was not provided with any warnings or instructions regarding the use of the product, either on the product itself or from the merchant. Later, Franceschi was sitting on his couch at home when one of two 18650s in his front pocket caught fire and

(O) 1947A

exploded. As a result, Franceschi sustained second- and third-degree burns to his left leg, left hand, and left forearm. Franceschi alleged products liability claims against LG Chem and LG Chem America, Inc. (LGCAI), as well as other claims against other defendants that are not at issue here.

LG Chem is a South Korean company with its headquarters and principal place of business in South Korea. It manufactures and sells a variety of lithium-ion batteries that are used as component parts by U.S.-based corporations in a wide variety of consumer goods, including cellular phones, electric cars, power tools, and e-cigarettes. These consumer goods are available for sale in Nevada's consumer market. LG Chem does not sell batteries directly to consumers. Rather, it runs a business-to-business model in which it only sells to other businesses after vetting those businesses and determining how the batteries will be used.

One of the lithium-ion battery models that LG Chem manufactures is the 18650. LG Chem maintained that the 18650s were designed and sold for use as industrial component parts for certain electronics and were not intended to be used as standalone, replaceable batteries. Instead, the 18650 cells were incorporated into battery packs, which were then placed in various devices as a power source. LG Chem claimed it never sold the 18650s to any manufacturer, wholesaler, or distributor to be used as a standalone battery. Despite this, stores in the United States began selling the 18650s for standalone use in e-cigarettes. Upon learning of this improper use of the 18650s, LG Chem took various steps to prevent these sales, including notifying their U.S. business customers that the batteries should not be sold for standalone use, as well as sending cease-and-desist letters to retailers and vape stores located all over the U.S., including Nevada, requesting that they stop selling the

18650s for standalone use in e-cigarettes. Additionally, LG Chem placed warnings on its website discouraging standalone use.

LGCAI is a Delaware corporation with its principal place of business in Georgia. It is a subsidiary of LG Chem. Its main area of business is selling petrochemical products produced by LG Chem, but it also assists with the logistical and financial aspect of model 18650 sales from LG Chem to U.S. businesses. LGCAI does not manufacture 18650s, nor does it distribute, advertise, or sell 18650s for standalone use. Upon learning that 18650s were being sold in vape shops for standalone use in e-cigarettes, LGCAI took no action, on the understanding that LG Chem had already begun investigating and responding to the situation.

After jurisdictional discovery was carried out, both LG Chem and LGCAI moved to dismiss the case for lack of personal jurisdiction. The district court granted these motions, finding that Franceschi had failed to show that his injuries arose out of or were related to the companies' contacts with Nevada. The orders were certified as final under NRCP 54(b), and Franceschi now appeals.

## DISCUSSION

Franceschi argues that personal jurisdiction attached to LG because LG's contacts in Nevada amounted to purposeful availment of the privilege of acting in Nevada and his claims clearly relate to those contacts. We disagree.

This court reviews a district court's determination of personal jurisdiction de novo. *See Fulbright & Jaworski LLP v. Eighth Jud. Dist. Ct.*, 131 Nev. 30, 35, 342 P.3d 997, 1001 (2015). Factual findings regarding determinations of personal jurisdiction are reviewed for clear error. *Dogra v. Liles*, 129 Nev. 932, 936, 314 P.3d 952, 955 (2013). When a nonresident defendant controverts a plaintiff's allegations of personal jurisdiction, the

plaintiff must provide prima facie evidence showing that personal jurisdiction exists. *Trump v. Eighth Jud. Dist. Ct.*, 109 Nev. 687, 692, 857 P.2d 740, 743 (1993). At this stage, "when factual disputes arise in a proceeding that challenges personal jurisdiction, those disputes must be resolved in favor of the plaintiff." *Id.* at 693, 857 P.2d at 744 (quoting *Levinson v. Second Jud. Dist. Ct.*, 103 Nev. 404, 407, 742 P.2d 1024, 1026 (1987)).

Personal jurisdiction over a nonresident defendant must be consistent with Nevada's long-arm statute and comport with principles of due process. *Tricarichi v. Coöperatieve Rabobank, U.A.*, 135 Nev. 87, 90, 440 P.3d 645, 649 (2019). "Because Nevada's long-arm statute is coterminous with the limits of constitutional due process, these two requirements are the same." *Cath. Diocese of Green Bay, Inc. v. John Doe 119*, 131 Nev. 246, 249, 349 P.3d 518, 520 (2015) (citations omitted); *see* NRS 14.065(1). There are two types of personal jurisdiction—general and specific, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021)—but only specific personal jurisdiction is at issue here.

For a court to exercise specific personal jurisdiction over a nonresident defendant, the defendant must have (1) "purposefully availed himself of the privilege of acting in the forum state or purposefully directed his conduct to the forum state," (2) the plaintiff's cause of action "must arise out of or relate to the defendant's contacts with the forum," and (3) "the exercise of jurisdiction . . . [may] not offend the traditional notions of fair play and substantial justice." *In re Tr. of Burgauer Revocable Living Tr.*, 138 Nev. 801, 806, 521 P.3d 1160, 1165 (2022) (citations and internal quotation marks omitted).

*LG purposely availed itself of Nevada's privileges, thereby satisfying the first prong of the specific-jurisdiction test*

To show purposeful availment, the plaintiff must demonstrate that the defendant's contacts with the forum state are not "random, isolated, or fortuitous" but instead intentional, such as "exploit[ing] a market in the forum State or entering a contractual relationship centered there." *Ford*, 592 U.S. at 359 (internal quotation marks omitted). The parties and the district court all agree that LG has purposefully availed itself of the privilege of conducting certain activities within Nevada. LG admits that it has some contacts with the state that arise from its sale of non-18650 batteries to companies in the electric vehicle industry in Nevada, as well as from the sale of petrochemical products in Nevada. Additionally, LG's relationship with manufacturing companies with national distribution networks—whereby it produces 18650s and sells them for use as component parts in products that it knows will be sold in Nevada—constitutes purposeful availment. These actions show that LG purposefully availed itself of the privilege of acting in the state. Thus, the first prong of the inquiry is satisfied.

*Franceschi's injuries do not "relate to" LG's contacts with Nevada*

If purposeful availment is established, a plaintiff must show that his claims "arise out of or relate to the defendant's contacts" with the forum. *Id.* (internal quotation marks omitted). The "arise out of" standard requires a causal connection between the defendant's actions and the plaintiff's injuries, while the "relates to" standard does not require such causation. *Id.* at 362. In order for Nevada to have specific jurisdiction over LG, the harm suffered by Franceschi must arise out of or relate to LG's contacts with the state. Here is where the dispute lies. Franceschi concedes that his injuries did not arise out of LG's actions but argues that his injuries

Supreme Court
of
Nevada

(O) 1947A

6

"relate to" LG's contacts with Nevada. Franceschi argues that LG systematically collects technical specifications from its manufacturing partners to ensure that 18650s will be used in those manufacturers' products. These batteries are then sold to the manufacturers as component parts in products that are sold in Nevada, among other places. And, so the argument goes, because Franceschi was injured in Nevada from LG's 18650 cells sold in Nevada, the injuries relate to LG's contacts. Both parties and the district court characterized this as a stream-of-commerce argument.

*Franceschi's stream-of-commerce argument is unavailing*

We understand Franceschi's first argument as advancing a stream-of-commerce theory of purposeful relatedness. The United States Supreme Court recognized this theory in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). There, the Court held that a forum state may exercise personal jurisdiction over corporations that deliver products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *Id.* This court has held that the stream-of-commerce test applies to products in general. *See Judas Priest v. Second Jud. Dist. Ct.*, 104 Nev. 424, 426, 760 P.2d 137, 139 (1988) ("The creator of a product is subject to personal jurisdiction where his product is sold if he is aware of and uses a national distribution system to make the sale.").

The Seventh Circuit Court of Appeals in *B.D. by and through Myers v. Samsung SDI Co., Ltd.* very recently considered an issue with a similar set of facts as the case before us. 143 F.4th 757 (2025). In that case, the plaintiff sued Samsung after one of its 18650 batteries exploded in his pocket. *Id.* at 762-63. In its analysis, the court identified two distinct streams of commerce: the end-product stream of commerce and the derivative-product stream of commerce. *Id.* at 762. The end-product

SUPREME COURT
OF
NEVADA

(O) 1947A

stream-of-commerce analysis is concerned with whether a party knows that its product will eventually be incorporated into an end product that will be available to consumers in specific forums. *See id.* at 768. The derivative-product stream-of-commerce analysis is concerned with whether a party places a discrete product—such as individual 18650s—into a stream of commerce that would lead to consumers purchasing the product. *See id.* at 768-69. For a defendant's contacts to relate to a plaintiff's injuries, there must be a connection between the stream of commerce a defendant manipulated and the stream of commerce through which a plaintiff's injuries arose. *See id.* at 771. That is, when there is a mismatch between a defendant's manipulation of a stream of commerce and the circumstances attending the injuries alleged in the underlying lawsuit, an exercise of personal jurisdiction is foreclosed. *See id.* at 772.

Pausing briefly in our analysis, we note Franceschi's objection to the propriety of considering multiple streams of commerce. Franceschi, quoting *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality op.), asserts that a specific-jurisdiction analysis "requires a forum-by-forum, or sovereign-by-sovereign analysis" that considers a forum in its totality and not through a microscopic analysis that assesses distinct market segments of a forum state, such as divergent streams of commerce. It is true that some courts decline to "granulat[e] . . . the forum . . . into distinct market segments when evaluating personal jurisdiction." *See LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 348 (Tex. 2023). But in our view, like that of the Seventh Circuit, distinguishing between a defendant's contacts with distinct markets "does not amount to dividing the forum." *Samsung*, 143 F.4th at 769.

Returning to our analysis, the Seventh Circuit Court of Appeals noted that Samsung sold 18650s to sophisticated customers that incorporated the cells into battery packs, which were thereafter integrated into end products sold in the forum state. *Id.* at 768. The court concluded that because Samsung intended that its batteries would be incorporated into battery packs after selling them to nationally recognized businesses, and it knew that the end products that used the packs would be available to consumers across the country, including the forum state, it had purposefully availed itself of the forum under the end-product stream of commerce. *Id.*

But the court went on to explain that the plaintiff's injuries did not result from a product that Samsung put into the end-product stream of commerce. *Id.* at 771. Instead, the plaintiff's injuries arose from his purchase of a standalone 18650 battery that was put into circulation by an unknown third party through its manipulation of a derivative-product stream of commerce. *See id.* Because of the disconnect between Samsung's purposeful contacts with the forum state from the sale of the 18650s as component parts and the plaintiff's injury, which resulted from the unauthorized purchase of a standalone battery, the court held that the exercise of personal jurisdiction was precluded. *Id.* Yet, the court noted that it would be a much closer call if the plaintiff's injuries had resulted from the explosion of 18650s encased in a battery pack powering a laptop that had traveled from Samsung into the computer through the end-product stream of commerce. *Id.* at 772. In that scenario, there would have been a more direct link between Samsung's contacts and the injury suffered by the plaintiff. *See id.*

(O) 1947A

We find this method for analyzing relatedness persuasive. Admittedly, Franceschi proffers sufficient evidence to show that LG was involved in an end-product stream of commerce because his evidence shows that LG cooperated with its partners—nationally recognized businesses—to produce 18650 battery packs that would be incorporated into end products sold throughout the United States, including Nevada. However, Franceschi provides no evidence that LG ever directly shipped individual 18650s into Nevada or served a consumer market in Nevada for individual 18650 cells, thereby participating in a derivative-product stream of commerce. In fact, Franceschi's attorney conceded that LG never shipped 18650s directly to Nevada, a concession consistent with responses LG representatives gave during depositions. This is critical because Franceschi alleges in his complaint that he was injured by a standalone 18650 that he purchased at a vape shop. While the record is unclear as to which third-party distributor sold the standalone batteries to the vape shop, whoever it was acted independently of LG and manipulated an alternative stream of commerce.

Further, and contrary to Franceschi's assertions, LG has provided substantial evidence that it attempted to foreclose such a market by prohibiting removal of 18650s from the battery packs, sending cease-and-desist letters to business partners, retailers, and vape shops throughout the country, including Nevada, to discourage the individualized sale of 18650s and placing warnings on its website discouraging such use, among other actions. *Samsung*, 143 F.4th at 770 ("[T]he Supreme Court has advised defendants that they can structure [their] primary conduct to lessen or avoid exposure to a given State's courts.") (citations and internal quotation marks omitted).

SUPREME COURT
OF
NEVADA

(O) 1947A

10

Thus, there is a disconnect between LG's contacts with Nevada through the sale of 18650s as component parts and Franceschi's injuries, likely the consequence of an unauthorized derivative-product purchase. As in *Samsung*, this disconnect precludes the exercise of personal jurisdiction over LG. This result is consistent with factually similar cases in other jurisdictions. *See, e.g.*, *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503-07 (9th Cir. 2023).

The other cases relied on by Franceschi are factually distinguishable. First, in *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court considered whether Montana and Minnesota had personal jurisdiction over Ford for claims of injuries caused by Ford-manufactured cars that had been sold by Ford out of state. 592 U.S. at 354-55. Ford argued that even though it served a market in the forum states for the model of cars at issue in the case, personal jurisdiction was improper because the specific cars involved in the accident were not designed or manufactured within the forum states. *See id.* The Court disagreed, observing that while the specific vehicles were not designed or manufactured in Montana or Minnesota, Ford "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs alleged malfunctioned and injured them in those States." *Id.* at 365. In other words, it was enough that Ford marketed and sold the specific models at issue in the forum states. *See id.*

We see no contradiction between the Court's holding in *Ford* and the holding in *Samsung*. In the former, Ford not only knew its end products—its cars—were available for sale in the two forums, but it actively served a market for those specific models of cars in those forums. And, in the logic of *Samsung*, there was no mismatch between Ford's contacts and

Supreme Court
of
Nevada

(O) 1947A

11

the harm suffered by the plaintiff; the harm was related to the contacts. *See Samsung*, 143 F.4th at 772.

Franceschi also points to *LG Chem America, Inc. v. Morgan*, 670 S.W.3d 341, 348-51 (Tex. 2023), and *Rockwell International Corp. v. Costruzioni Aeronautiche Giovanni Agusta*, 553 F. Supp. 328, 331-32 (E.D. Pa. 1982), in support of his arguments. These cases are likewise distinguishable. In *Morgan*, the Texas Supreme Court held that Texas could exercise specific personal jurisdiction over LG in a plaintiff's products liability suit alleging injury from standalone LG 18650 batteries purchased in the forum state. 670 S.W.3d at 343-44. The court specifically noted that there was evidence LG had sold and shipped thousands of 18650 batteries to Texas and thus the claims were related to LG's Texas contacts. *Id.* at 348-49. Here, however, Franceschi has provided no evidence that LG ever shipped any 18650s to Nevada.

In *Rockwell*, the court held that it had jurisdiction over a foreign manufacturer after faulty ball bearings that it had produced for a specific model of helicopter caused one such vehicle to crash into a river. 553 F. Supp. at 329-30 (E.D. Pa. 1982). The court determined that the manufacturer placed its ball bearings in the stream of commerce when it "decided to enter and exploit" the relevant international market and acted with knowledge that its ball bearings would be marketed throughout the United States as a component part of the helicopter. *See id.* at 331-32. This case is more akin to *Samsung's* hypothetical scenario, where a component part travels through the end-product stream of commerce into a final product, which malfunctions and causes injury. *See Samsung*, 143 F.4th at 772. Thus, there was no mismatch between the defendant's contacts and the harm alleged by the plaintiff, as there is here.

Thus, we hold that Franceschi's injuries do not relate to LG's stream-of-commerce contacts. Because the second prong of the inquiry is not satisfied, there is no personal jurisdiction over LG for these claims and no need to address the third prong of the test.

## CONCLUSION

Specific jurisdiction requires that a defendant purposefully avail itself of the forum state and that a plaintiff's injuries arise out of or relate to the defendant's contacts with the state. In determining whether a defendant's stream-of-commerce contacts satisfy the relatedness requirements, courts may look at divergent streams of commerce, including the end-product stream of commerce and the derivative-product stream of commerce. When there is a disconnect between a defendant's contacts and the harm alleged by the plaintiff in the complaint, specific jurisdiction may not lie with the forum court. The district court did not err when it concluded that Franceschi failed to provide sufficient evidence to show that LG's contacts with Nevada related to his injuries. Accordingly, we affirm the district court's decision.

_____, J.
Lee

We concur:

_____, J.
Pickering

_____, J.
Cadish